UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE STATE OF NEW YORK *EX REL* VINOD
KHURANA and THE CITY OF NEW YORK *EX REL*
VINOD KHURANA,

                                    Plaintiffs,

                    v.                                          Case No. 15-cv-06605-JFK

SPHERION CORP. (N/K/A SFN GROUP, INC.),

                                    Defendant.


**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT .......................................................................................................... 2

I.      PLAINTIFF HAS FAILED TO STATE PLAUSIBLE CLAIMS FOR
        VIOLATIONS OF THE FALSE CLAIMS ACTS AGAINST SFN GROUP
        BECAUSE PLAINTIFF DOES NOT PLEAD ANY FRAUDULENT ACTIVITY
        BY SFN GROUP AND THE GOVERNING DOCUMENTS CONTRADICT
        PLAINTIFF'S THEORY ............................................................................... 2

        A.      Plaintiff's Opposition Highlights The Conclusory Nature of His Pleading ......... 2

        B.      Plaintiff Improperly Seeks to Elevate Alleged Breaches Into False Claims ........ 3

II.     PLAINTIFF'S RETALIATORY DISCHARGE CLAIM FAILS BECAUSE HE
        HAS NOT STATED A PLAUSIBLE CLAIM THAT HE WAS TERMINATED
        BY SFN GROUP AS A RESULT OF ANY PROTECTED ACTIVITY ........................ 6

III.    PLAINTIFF'S FALSE CLAIMS ACTS CLAIMS ARE BARRED  BY THE
        PUBLIC DISCLOSURE BAR ......................................................................... 7

        A.      The Complaint Was Filed After The Transactions At Issue Were Publicly
                Disclosed And Is Substantially Similar To Publicly Disclosed Information ........ 7

        B.      Khurana Was Not An "Original Source" ............................................................ 8

                1.      Plaintiff Did Not Disclose To The Government The Information
                        On Which His Allegations Is Based Prior To Public Disclosure............... 9

                2.      Plaintiff Did Not Supply Information That Materially Added to
                        Publicly Disclosed Information ................................................................ 10

CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

## CASES

*Cooper v. Blue Cross & Blue Shield of Florida, Inc.,*
  19 F.3d 562 (11th Cir. 1994) ..................................................................................... 8

*EBC I, Inc. v. Goldman Sachs & Co.,*
  91 A.D.3d 211 (1st Dep't 2011) ................................................................................. 3

*Mikes v. Straus,*
  274 F.3d 687 (2d Cir. 2001)........................................................................................ 5

*United States ex rel. Kester v. Novartis Pharms. Corp. (Kester I),*
  23 F. Supp. 3d 242 (S.D.N.Y. 2014)........................................................................... 2

*United States ex rel. Kester v. Novartis Pharms. Corp. (Kester II),*
  43 F. Supp. 3d 332 (S.D.N.Y. 2014)........................................................................... 7

*United States ex rel. King v. Hillcrest Health Ctr., Inc.,*
  264 F.3d 1271 (10th Cir. 2001) .............................................................................. 9, 10

**PRELIMINARY STATEMENT**

Plaintiff's opposition simply highlights that he cannot allege facts supporting a plausible claim for alleged violations of the False Claims Acts.  All that Plaintiff has are conclusory allegations of Plaintiff's concerns regarding the CityTime project, which, if true, would suggest that the SFN Group did a poor job in performing its contract with the City.[1]  But no feat of legal craftmanship can elevate those allegations into a plausible False Claims Act claim.

Plaintiff's opposition is, perhaps, more significant for what it does not say than what it does.  For example:

- Plaintiff fails to rebut SFN Group's showing that he fails to plead facts of anything more than his "concerns" regarding the performance of the CityTime project;

- Plaintiff ignores that wrongdoers Mazer and Berger were hired as Subject Matter Experts ("SMEs") by the City, were under the City's control and "report[ed] directly to the OPA Assistant Executive Director" or his designee – not SFN Group (Hyland Aff. Ex. 5 (3d Am. Agreement, § 1));

- Plaintiff glosses over that Mazer's and Berger's actions were done solely for their own personal benefit and could not have been within the scope of their agency;

- Plaintiff does not dispute that he provided none of the extensive information set forth in the Criminal Complaint, which was filed and unsealed before Plaintiff spoke with any authorities (Compl. ¶ 61).

Instead of addressing these failures head on, Plaintiff continues to resort to conclusory assertions: namely, that SFN Group failed to conduct quality assurance tasks and retained employees who had outside interests and improperly approved overtime, travel expenses and severance (Opp. Br. at 3).  This falls far short of satisfying the *Iqbal* and *Twombly* standards.

Nor does Plaintiff identify any "protected conduct" in his Complaint or Opposition that would give rise to a retaliatory discharge claim.  Plaintiff simply does not allege that he provided

---

[1]     A copy of the Complaint ("Compl.") is attached as Exhibit 1 to the Affidavit of Mark J. Hyland, sworn to October 9, 2015 ("Hyland Aff.").

evidence of false claims until years *after* his discharge, and thus he could not have been discharged for engaging in "protected conduct."[2]

In sum, the best Khurana can do is allege that SFN Group did not do a good job in performing its contract with the City.  While that would be disputed, it is of no moment: failure to perform does not equate to a False Claims Act claim.  The Complaint should be dismissed.

ARGUMENT

I.    **PLAINTIFF HAS FAILED TO STATE PLAUSIBLE CLAIMS FOR VIOLATIONS OF THE FALSE CLAIMS ACTS AGAINST SFN GROUP BECAUSE PLAINTIFF DOES NOT PLEAD ANY FRAUDULENT ACTIVITY BY SFN GROUP AND THE GOVERNING DOCUMENTS CONTRADICT PLAINTIFF'S THEORY**

Conceding Rule 9(b) applies to his False Claims Act claims (Opp. Br. at 7), Plaintiff nevertheless contends that he has adequately pleaded SFN Group's False Claims Act liability based on (i) SFN Group's alleged failure to perform and (ii) alleged vicarious liability for the acts of Mazer and Berger.  *See* Opp. Br. at 7-15.  Each of these arguments is without merit.

A.    **Plaintiff's Opposition Highlights The Conclusory Nature of His Pleading**

Nowhere can be found a particularized pleading alleging facts of a knowing violation of the False Claims Acts by SFN Group.  *See*, *e.g.*, *United States ex rel. Kester v. Novartis Pharms. Corp. (Kester I)*, 23 F. Supp. 3d 242, 255-256 (S.D.N.Y. 2014).  In opposition, Plaintiff stresses that SFN Group failed to provide Quality Assurance services and that SFN Group violated its duties by "failing to disclose the abysmal lack of progress in development of City Time as a general matter" or that Mazer and Berger had "conflicts" (Opp. Br. at 11-13).  This just parrots the Complaint and highlights its deficiencies.

---

[2]    Plaintiff also seeks to bolster his case by citing a number of news articles identifying him as a whistleblower.  Opp. Br. at 2.  But he was the source of those news articles, portraying himself as a hero.  His self-generated "positive" press presents nothing of relevance to the Complaint.

The best Plaintiff can do on detail is:

- Plaintiff ran "load performance tests" (Compl. ¶ 29); voiced his "concerns" (Compl. ¶¶ 29-31) and told FISA employees "the program would not support the number of users required" (Compl. ¶ 32).

- "[I]t was no later than late 2004 or early 2005 that Spherion was aware that the project was going to fail and knew or should have known that it was being run by Spherion employees who were intentionally sabotaging the implementation." (Compl. ¶ 35.)

- Mazer and Berger -- not SFN Group -- submitted false invoices regarding severance, overtime and other expenses. (Compl. ¶ ¶ 45-46.)

- SFN Group "failed to exercise any oversight" over Mazer and Berger. (Compl. ¶ 50.)

What the opposition makes clear is that Plaintiff is really seeking to hold SFN Group liable for its alleged *contractual* breaches of the QA Agreement -- not False Claims Act claims. Opp. Br. at 11-14; *see also* Compl. ¶ 67 ("But for Spherion's failure to execute the responsibilities inherent in its contract with OPA, Mazer and Berger would not have been able to perpetrate their fraudulent kickback schemes."). Plaintiff offers no legal or factual explanation how, even if SFN Group had breached the QA Agreement by failing to disclose the lack of progress of the CityTime project,[3] such breach would constitute the knowing submission of a false claim where the lack of progress was a widely publicized fact. Plaintiff plainly fails the tests of *Twombly* (complaint does not permit inference that defendant is liable) and *Iqbal* (labels and conclusions "will not do"). Nor does the Complaint satisfy the particularity requirements of Rule 9(b). The Complaint should be dismissed on these bases alone.

### B.    Plaintiff Improperly Seeks to Elevate Alleged Breaches Into False Claims

To save his deficiently pleaded claims against SFN Group, Plaintiff argues that SFN Group is vicariously liable for any false claims that were caused to be submitted by wrongdoers

---

[3]    Plaintiff's suggestion that SFN Group owed the City a fiduciary duty of disclosure (Opp. Br. at 12) is undermined by the very case he cites. As the First Department explained, providing advice is not sufficient to give rise to a fiduciary duty. *EBC I, Inc. v. Goldman Sachs & Co.*, 91 A.D.3d 211, 214 (1st Dep't 2011).

Mazer and Berger.  Opp. Br. at 7-11.  First, Plaintiff confuses the relationship between SFN Group and the two wrongdoers, at times stating they were employees of SFN Group and at other times recognizing they were independent contractors.  *See* Opp. Br. at 7-8.  Mazer and Berger were not SFN Group employees.  They were subcontractors employed by MS Creative Technologies, Inc. ("MS Creative"), which itself had a contractor arrangement with SFN Group.  Hyland Aff. Ex. 6.[4]

More fundamentally, Plaintiff ignores the difference between Mazer and Berger and typical subcontractors.  SFN Group did not select Mazer and Berger as subcontractors to perform QA services under the Agreement.  The City did.  In 2002 -- almost two years *before* Mazer and Berger were selected and retained by the City as SMEs -- the City and SFN Group amended the contract to provide for SMEs.  Hyland Aff. Ex. 5 (2d Am. Agreement, § 3).  The SMEs hired for the CityTime project were "chosen by" or "accepted by" the City, and were to "report directly to the OPA Assistant Executive Director" or his designee.  Hyland Aff. Ex. 5 (3d Am. Agreement, § 1); Hyland Aff. Ex. 5 (5th Am. Agreement, § 2.3.7) ("[i]n performing tasks, Subject Matter Experts shall report directly to the Assistant Executive Director, CityTime, or a designee").  Likewise, SFN Group is not liable for Mazer and Berger's conduct by operation of the Agreement itself.  Plaintiff focuses on Article 4 of the QA Agreement to argue that SFN Group has contractually assumed liability for Mazer and Berger's acts.  Opp. Br. at 9-10.  Under this provision, which -- significantly -- pre-dated the amendments to include SMEs, SFN Group was responsible for the contractors it engaged to perform QA services.  Hyland Aff. Ex. 5.  But Plaintiff (Opp. Br. at 9-10) completely ignores the amendments to the Agreement that materially

---

[4]     Plaintiff asserts that SFN Group "never bothers to name" subcontractor MS Creative in its brief.  Opp. Br. at 8.  Plaintiff gets it wrong again.  SFN Group expressly identified MS Creative (Def. Mem. at 4-5) and attached the contracts with MS Creative as Exhibit 6 to the Hyland Aff.

changed the terms and the relationship between the City and any SMEs it approved and would have the Court pretend those amendments do not exist.[5]

Nor does the conflict of interest provision in the Agreement give rise to False Claims Act liability based on Mazer's and Berger's conflicts.  Opp. Br. at 13-14.  Plaintiff makes no allegation (Opp. Br. at 14) that SFN Group had knowledge of conflicts supporting a conclusion that it knowingly submitted a false claim.  Plaintiff has not alleged that SFN Group made any certifications regarding the absence of conflicts in its requests for payments, so there is no basis for False Claims Act liability as a matter of law.  *See Mikes v. Straus*, 274 F.3d 687, 697 (2d Cir. 2001).  In any event, Mazer and Berger's knowledge cannot be imputed to SFN Group because they were not acting within the scope of any duty to SFN Group.

Finally, the pleadings and documents referenced therein demonstrate that any possible legal authority Mazer and Berger possessed was conveyed upon them by the City.[6]  Plaintiff makes no factual allegations that Mazer and Berger perpetrated their fraud for the benefit of anyone other than themselves.  Indeed, the Complaint alleges that Mazer and Berger began a concerted effort in 2005 to replace SFN Group employees, like him, with their own resources for their personal financial gain.  Compl. ¶ 49.  Thus, the cases cited by Plaintiff for the proposition that SFN Group is liable as a prime contractor or a principal (Opp. Br. at 7-8) are inapposite.

---

[5]   *See, e.g.*, Hyland Aff. Ex. 5 (2d Am. Agreement, § 3); Hyland Aff. Ex. 5 (3d Am. Agreement, § 1); Hyland Aff. Ex. 5 (5th Am. Agreement, § 2.3.7).  Plaintiff's position makes little sense where the Agreement was no longer limited to QA services, and under the express terms of the Agreement, SMEs did not report to SFN Group management.

[6]   Plaintiff's suggestion that Mazer and Berger had "apparent authority" for SFN Group (Opp. Br. at 10) is baseless.  SFN Group's counterparty – the City – was certainly aware that Mazer and Berger reported to the OPA by virtue of the Agreement with SFN Group.

## II.   PLAINTIFF'S RETALIATORY DISCHARGE CLAIM FAILS BECAUSE HE HAS NOT STATED A PLAUSIBLE CLAIM THAT HE WAS TERMINATED BY SFN GROUP AS A RESULT OF ANY PROTECTED ACTIVITY

Plaintiff argues that his "efforts to inform FISA employees and his superiors at Spherion of CityTime's failures" constitutes protected conduct for which he was allegedly discharged. Opp. Br. at 24.  The Complaint allegations, however, viewed in their most favorable light, amount to nothing more than Plaintiff's claims that he made statements that *he* believed the performance of the CityTime project was poor and the project was failing:

- "At the conclusion of one of the meetings in late 2004 or early 2005 attended by Mazer, Berger, Fayerman and Gurjal in which Relator voiced his serious concerns about the ability of the project to perform at its most basic level . . . ." (Compl. ¶31.)

- "On numerous occasions during late 2004 and early 2005, Relator also told other Spherion representatives, like Cohen, about serious problems with CityTime. For instance, Cohen expressed his awareness of the ongoing performance issues by repeatedly inquiring to Relator, 'what is going on here?' Each time, Relator responded that the project was not performing to standards, that the software would fail with over 20 users, and that given the time and money already invested in the project, it should be scrapped."  (Compl. ¶ 34.)

- "In March 2006, in a meeting with Cohen and another Spherion employee named Arthur Donnelly, Relator told them that management should scrap the project. Relator said that Mazer was not the right person to head the project and that he, along with Berger and SAIC management, were doing this only to pocket the money for themselves by extending the contract for as long as possible knowing it was a failure."  (Compl. ¶42.)

- "Relator met with Cohen the following Monday and Cohen asked him what had happened. Relator told Cohen that he was being fired because he had communicated to Spherion and FISA that performance was poor and that the project was failing. He also told Cohen that something bad was occurring at the project."  (Compl. ¶58.)

Plaintiff fails to explain how these expressions of his concerns, allegedly made beginning in late 2004, were protected conduct under the False Claims Acts or resulted in his termination in 2007.  Simply put, Plaintiff does not allege that he provided any information to anyone evidencing that false claims were being submitted while he was employed by Spherion or that any such information played a role in his termination.  In fact, Plaintiff in 2009 acknowledged he

did nothing to stop the alleged wrongdoing until after he left SFN Group.  *See* Hyland Aff. Ex.

12 ("I have always wanted to tell this story but stopped from doing so.  I suppose when I was

there, it was greed that prevented me.").  Plaintiff himself alleges that he did not contact DOI

investigators until 2010 -- over three years after his employment with Spherion ended.  Compl.

¶ 64.  Thus, he could not have been "retaliated" against.  At best, Plaintiff plausibly pleads that

he was removed from the CityTime project because Mazer wanted to bring in his own people.

### III.   PLAINTIFF'S FALSE CLAIMS ACTS CLAIMS ARE BARRED BY THE PUBLIC DISCLOSURE BAR

In opposition, Plaintiff asserts that his claims are not subject to the public disclosure bar

because information about SFN Group's alleged involvement in the CityTime fraud was not

publicly disclosed (Opp. Br. at 15-17) and that he is the "original source" of the information in

his complaint (Opp. Br. at 18-22). [7]  Neither contention has merit.

#### A.   The Complaint Was Filed After The Transactions At Issue Were Publicly Disclosed And Is Substantially Similar To Publicly Disclosed Information

Whether information regarding a defendant was publicly disclosed turns on whether

publicly disclosed information "could have formed the basis for a governmental decision on

prosecution, or could at least have alerted law-enforcement authorities of the likelihood of

wrongdoing."  *United States ex rel. Kester v. Novartis Pharms. Corp. (Kester II)*, 43 F. Supp. 3d

332, 347 (S.D.N.Y. 2014) (internal quotation omitted).  That is, a public disclosure need not

explicitly identify that a particular defendant is a wrongdoer so long as it provides enough

information such that the defendant is identifiable.  *Kester II*, 43 F. Supp. 3d at 347.  Plaintiff's

---

[7]     Plaintiff asserts that SFN Group misstated the law regarding the jurisdictional nature of the public disclosure bar.  (Opp. Br. at 17 n.13.)  To the contrary, SFN Group acknowledged the division between courts in this District and noted that Plaintiff's claims were barred even under a Rule 12(b)(6) standard (Def. Mem. at 16-17.).  Plaintiff does not contest that this Court may take judicial notice of public disclosures and otherwise consider the documents Plaintiff alleges are the basis for his "original source" allegations in considering whether Plaintiff's claims are barred by the public disclosure bar.

reliance on *Cooper v. Blue Cross & Blue Shield of Florida, Inc.*, 19 F.3d 562, 566 (11th Cir. 1994), for the proposition that the public disclosure bar only applies on a defendant-by-defendant basis (Opp. Br. at 17) is misplaced. *Cooper* recognized that the public disclosure bar may be triggered where the defendant was "specifically named *or otherwise directly identified*." *Cooper*, 19 F.3d at 566 (emphasis added).

To the extent Plaintiff seeks to hold SFN Group liable for the acts of Mazer and Berger -- and that is what he alleges -- this standard is satisfied. Plaintiff concedes that he did not complain to authorities until after the criminal complaint detailing the billing scheme perpetrated by Mazer, Berger and others was unsealed. Compl. ¶ 5 n.2; *see also* Hyland Aff. Ex. 7. Plaintiff does not dispute that the City was aware of SFN Group's Agreement with MS Creative. Indeed, at the time the criminal complaint was unsealed on December 10, 2010, SFN Group's relationship with the relevant parties, including its consulting agreements with Mazer and Berger and its prior relationship with the head of the OPA, had been publicly disclosed and were certainly known by the City. *See* Def. Mem. at 18-20.

Likewise, to the extent Plaintiff seeks to hold SFN Group liable for purported breaches of its QA contract with the City (which would not give rise to False Claims Act claims in any event), issues related to SFN Group's contract with the City were also publicly disclosed at the time Plaintiff filed his Complaint. Plaintiff's opposition ignores the extensive media coverage and public disclosures regarding issues with the CityTime project beginning in 2004. *See, e.g.*, Hyland Aff. Ex. 9; Hyland Aff. Ex. 20 at 91-92; Hyland Aff. Ex. 21 at 25-27; Hyland Aff. Ex. 22. These disclosures were sufficient to identify SFN Group's role in the CityTime project.

### B.    Khurana Was Not An "Original Source"

Plaintiff acknowledges that, under the False Claims Acts, a relator may qualify as an "original source" by: (1) voluntarily disclosing to the government, before any public disclosure,

the information on which allegations or transactions in his claim are based; or (2) voluntarily disclosing to the government, at any time, information that is "independent of" and "materially adds" to the publicly disclosed allegations or transactions.  *See* Opp. Br. at 18.  Plaintiff cannot satisfy either prong.

1. <strong>Plaintiff Did Not Disclose To The Government The Information On Which His Allegations Is Based Prior To Public Disclosure</strong>

Plaintiff concedes (Opp. Br. at 19-20) that he did not provide any information to an investigative authority prior to the filing of the criminal complaint.  As set forth in SFN Group's opening brief, that alone is sufficient to defeat Plaintiff's claim that he is the original source.  *See* Def. Mem. at 22.  Contrary to Plaintiff's contention, this is not an "'innovative' restriction" (Opp. Br. at 20) on False Claims Act claims.  Instead, it is consistent with the application of the statutes on which the False Claims Acts are based, and is in fact the same position that has been taken by the City in this litigation.  Hyland Aff. Ex. 2 at 16 n.7.

Moreover, the "information" submitted by Plaintiff did not provide any facts that led to the conclusion of fraud.  *See* Def. Mem. at 21; *United States ex rel. King v. Hillcrest Health Ctr., Inc.*, 264 F.3d 1271, 1280 (10th Cir. 2001) ("the information on which the allegations are based means the information underlying or supporting the fraud allegations") (internal quotation omitted).  While Plaintiff contends that the information he provided was "substantive" (more conclusory argument) (Opp. Br. at 20), he is unable to articulate how such information could lead to the conclusion of fraud to support a False Claims Act claim.  Instead, the information reflected load test results that Plaintiff alleges indicate the CityTime project was not functioning, Plaintiff's "belief" that the CityTime project was a failure and a waste of money, and Plaintiff's claim that Mazer and Berger knew the project was going to fail.  Compl. ¶¶ 31, 33, 63; Hyland

9

Aff. Exs. 11, 12.  This information -- nothing more than Plaintiff's vague concerns -- is insufficient to satisfy the "original source" standard.  *See King*, 264 F.3d at 1280.

        2.      **Plaintiff Did Not Supply Information That Materially Added to Publicly Disclosed Information**

Plaintiff (Opp. Br at 21-22) fails to explain how the documents provided by Plaintiff implicated SFN Group in the alleged wrongdoing.  Indeed, those documents (Hyland Aff. Ex. 10) show that Plaintiff repeated his conclusory concerns and suspicions about the CityTime project to the DOI and that the specific data provided by Plaintiff related to technical problems with the CityTime software.  That is, there were no new facts about SFN Group's relationship to CityTime and those implicated in the fraud.  *See* Def. Mem. at 25.  Accordingly, Khurana does not qualify as an "original source."

CONCLUSION

For the reasons set forth above, SFN Group respectfully requests that the Court dismiss the Second Amended Complaint in its entirety with prejudice.

New York, New York
December 23, 2015

               Respectfully submitted,

               SEWARD & KISSEL LLP

               By: /s/ Mark J. Hyland
                   Mark J. Hyland
                   Rita M. Glavin
                   Thomas Ross Hooper
               One Battery Park Plaza
               New York, NY 10004
               Telephone:  (212) 574-1200

               *Attorneys for SFN Group, Inc.*
                *(f/k/a Spherion Corp.)*

SK 28938 0001 6948877