Case 1:15-cv-06605-JFK-AJP   Document 84   Filed 03/...

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/28/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------- X
THE STATE OF NEW YORK EX REL    :
VINOD KHURANA and THE CITY OF   :
NEW YORK EX REL VINOD KHURANA,  :
                                :
              Plaintiffs,       :    No. 15 Civ. 6605 (JFK)
                                :    **OPINION & ORDER**
    -against-                   :
                                :
SPHERION CORP. (N/K/A SFN       :
GROUP, INC.),                   :
              Defendant.        :
------------------------------- X

APPEARANCES

FOR PLAINTIFF/RELATOR VINOD KHURANA:
    David Kovel, Esq.
    David Bishop, Esq.
    KIRBY McINERNERY, LLP

    John R. Newcomer, Jr., Esq.
    Elaine Stromgren, Esq.
    Jillian Estes, Esq.
    JAMES HOYER, P.A.

FOR THE CITY OF NEW YORK:
    Zachary W. Carter, Esq.
    Gail Rubin, Esq.
    Sabita Krishnan, Esq.
    Lilia Toson, Esq.
    CORPORATION COUNSEL OF THE CITY OF NEW YORK

**John F. Keenan, United States District Judge:**

    Plaintiff Vinod Khurana ("Khurana") moves the Court to award him a relator's share of the $500 million settlement that the City of New York and the Department of Justice reached with Science Applications International Corp. in connection with a March 2012 deferred prosecution agreement.  The City of New York

1

opposes the motion.  The Court denies the motion because Khurana's qui tam claims have been dismissed and, thus, Khurana has failed to assert a valid qui tam action, which is a prerequisite to a relator's recovery of an alternate civil remedy under the New York State False Claims Act or an alternate action under the New York City False Claims Act.

## I. Background

### A. Procedural Background

Familiarity with this Court's prior opinion and order, (Op. & Order, ECF No. 70 (filed Nov. 10, 2016)), is presumed, however a brief review of the history of this action is appropriate. Khurana originally filed this action under seal on March 31, 2011, in New York Supreme Court. (See Def.'s Notice of Removal Ex. A, ECF No. 1-1 at 74 (filed Aug. 20, 2015).)  The essence of Khurana's original complaint is that, over the course of several years, multiple parties perpetuated a scheme to defraud the City of New York (the "City") through the large-scale CityTime project, which aimed to automate timekeeping and payroll functions for the City. (See id.)  Khurana asserted qui tam claims on behalf of the State of New York ("the State") and the City under the New York State False Claims Act ("NYS FCA"). (See id. at 75, 79.)  Khurana also claimed retaliatory discharge under the NYS FCA and New York City False Claims Act ("NYC FCA"). (See id. at 97.)

On April 22, 2013, the State filed a Notice of Election in New York Supreme Court, declining to file a complaint against any of the defendants named in Khurana's action or to intervene in the action. (Id. at 103-04.)  The State's Notice of Election authorized the City to intervene in Khurana's action, convert the action into a civil enforcement action, or decline to do either. (Id.)  On October 14, 2013, Khurana filed an amended complaint, also under seal, in New York Supreme Court. (Id. at 36.)  The amended complaint largely resembled the original.

On March 4, 2015, the City filed under seal a Notice of Election in New York Supreme Court declining to intervene in Khurana's action or convert it to a civil enforcement action. (Id. at 106.)  On July 13, 2015, Khurana filed a second amended complaint, which is the operative complaint here.[1]  ("Second Amended Complaint," Def.'s Notice of Removal Ex. A, ECF No. 1-1 at 4.)  The second amended complaint named only Spherion Corp.[2] as a defendant and added a count for false claims under the NYC FCA. (Id. ¶¶ 1, 70-73.)  On August 20, 2015, Spherion removed

---

[1] "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977).

[2] As the Court has previously noted, Spherion Corp. changed its name to SFN Group, Inc. in 2011, after much of the activity relevant to this case transpired.  The Court refers to the company as "Spherion" throughout this Opinion, however, for sake of clarity and convenience.

the case to federal court on the basis of diversity. (See Def.'s Notice of Removal, ECF No. 1 (filed Aug. 20, 2015).)

On January 8, 2016, Khurana moved for a relator's share of a $500 million settlement between the Department of Justice and Science Applications International Corporation ("SAIC"), who was named as a defendant in Khurana's original and amended complaints, but omitted from the second amended complaint. (See Pl.'s Mem. of L. in Supp. of Mot. for Relator's Share, ECF No. 48 (filed Apr. 15, 2016).) Khurana primarily relied on the NYS FCA, but also referred to the NYC FCA. (See, e.g., id. at 18 n.78.) The motion was fully briefed on April 15, 2016.

On November 10, 2016, the Court dismissed the qui tam claims Khurana brought under the NYS FCA and NYC FCA. (See Op. & Order, ECF No. 70 (filed Nov. 10, 2016).) As to certain of Khurana's claims, the Court held that they were precluded by the "public disclosure bar," which prohibits a relator from relying on publicly disclosed information when commencing a qui tam action. (See id.) As to Khurana's remaining qui tam claims, the Court held that they failed to satisfy the applicable pleading requirements. (See id. at 35–42.) The Court did not dismiss Khurana's claims regarding retaliatory discharge.

### B. Factual Background

The City launched the CityTime project in 1998 with the aim of automating timekeeping and payroll functions for

approximately 180,000 City employees by 2010. (Second Am. Compl. ¶ 13.)  Over the course of the project, various contractors and subcontractors worked on CityTime, including SAIC and Spherion. (Id. ¶¶ 14, 15.)  Spherion hired Khurana as a consultant to work on CityTime in 2004 and terminated him in 2007. (Id. ¶ 9.)

As alleged in Khurana's second amended complaint, in late 2004, Khurana began noticing problems with the performance capabilities of CityTime software and started voicing concerns to various individuals, including employees of SAIC and Spherion. (Id. ¶¶ 29-30.)  Khurana also witnessed CityTime contractors engaging in "fraudulent conduct," including billing for, among other things, severance packages for previously terminated employees, overtime hours incurred despite express prohibition against overtime expenditures, and one employee's personal travel expenses. (Id. ¶ 45.)  Khurana alleges that from 2004 to 2007 he repeatedly informed Spherion employees that CityTime had "serious problems" and would inevitably fail, but Spherion "continued with the project as if those problems did not exist" and ultimately retaliated against Khurana by terminating his employment in May 2007. (Id. ¶¶ 34, 36, 57–58.)

In 2009, Khurana drafted a complaint that memorialized his knowledge related to CityTime and sent it to the City's Department of Investigations ("DOI"). (Id. ¶ 62.)  Khurana then conducted an "extensive" media campaign by posting comments to

5

articles on the websites of several news outlets, including CNN and the New York Daily News. (Id. ¶¶ 62-63.)  Beginning in late 2010, Khurana met with DOI investigators and provided them with a "full accounting" of his knowledge regarding CityTime. (Id. ¶ 64.)

The news media began reporting problems with CityTime in 2004 and the project received criticism from a committee of the New York City Council in 2008. (See, e.g., Decl. of Sabita Krishnan Exs. A, D, E, ECF No. 53 (filed Apr. 15, 2016).)  On December 15, 2010, the U.S. Attorney's Office for the Southern District of New York and the DOI jointly unsealed a criminal complaint and announced charges against six individuals connected to the CityTime scheme. (See Krishnan Decl. Exs. A, G, H.)  The criminal complaint included substantially detailed allegations of, among other things, fraudulent billing and a concealed kickback scheme conducted by various CityTime contractors and the defendant employees. (See Krishnan Decl. Exs. A, H.)

On March 8, 2012, SAIC signed a deferred prosecution agreement (the "DPA") with the U.S. Department of Justice. (See Krishnan Decl. Exs. A, O.)  Under the terms of the DPA, SAIC admitted to having defrauded the City and agreed to a civil forfeiture of $500 million, with the majority of the funds intended to repay the City (the "SAIC Settlement"). (See

Krishnan Decl. Exs. A, O, P, Q.)  The DPA released all claims by the City against SAIC related to the CityTime project. (See City's Mem. of L. in Opp'n to Mot. for Relator's Share 4, ECF No. 50 (filed Apr. 15, 2016).)  Khurana argues that the DPA and SAIC Settlement effectively released his qui tam claims, but without compensating him.

## II. Legal Standard

### A. Overview of the NYS FCA and NYC FCA

The NYS FCA's purpose is to prevent and uncover fraud on the State. See, e.g., State ex rel. Seiden v. Utica First Ins. Co., 943 N.Y.S.2d 36, 39 (N.Y. App. Div. 2012) (stating that the NYS FCA "applies to any sort of looting of the public purse"). As relevant here, it accomplishes this by imposing liability on any person who "knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval," or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." N.Y. STATE FIN. LAW § 189(1)(a), (b).  The NYS FCA permits a private person, known as a "relator," to bring a civil action, known as a qui tam action, on behalf of the government for violations. See id. § 190(2).

The NYS FCA is modeled on the federal False Claims Act (the "FCA"). See United States ex rel. Bilotta v. Novartis Pharm. Corp., 50 F. Supp. 3d 497, 509 (S.D.N.Y. 2014).  "Because the

7

[NYS FCA] mirrors the FCA in many respects, 'it is appropriate to look toward federal law when interpreting the New York act.'" United States v. N. Adult Daily Health Care Ctr., No. 13-CV-4933 (MKB), 2016 WL 4703653, at *3 (E.D.N.Y. Sept. 7, 2016) (quoting Seiden, 943 N.Y.S.2d at 39); see also United States v. N.Y. Soc. for the Relief of the Ruptured & Crippled, Maintaining the Hosp. for Special Surgery, No. 07 Civ. 292 (PKC), 2014 WL 3905742, at *11 (S.D.N.Y. Aug. 7, 2014) ("New York courts rely on federal FCA precedents when interpreting the [NYS FCA].").

Under the NYS FCA, once a relator files a qui tam action, the government has multiple options. The government may intervene in the relator's qui tam action or convert the action into a civil enforcement action. See N.Y. STATE FIN. LAW § 190(5)(a). The government may also refrain from intervening in or converting a qui tam action and, instead, allow the relator to pursue it to a resolution. See id. § 190(6)(b). Notably, the NYS FCA does not foreclose the government from electing to pursue "any remedy available" with respect to alleged false claims. Id. § 190(5)(c).

Like the NYS FCA, the NYC FCA closely tracks the federal FCA. See Ping Chen ex rel. United States v. EMSL Analytical, Inc., 966 F. Supp. 2d 282, 305 (S.D.N.Y. 2013). The NYC FCA also permits a relator to submit a "proposed civil complaint," N.Y.C. ADMIN. CODE § 7-804(b)(1), and authorizes the City's

Corporation Counsel to commence a civil enforcement action based on the relator's information, designate the relator for the purpose of filing a civil enforcement action, or decline to commence a civil enforcement action or designate the relator to do so. See id. § 7-804(b)(2).  Significantly, a civil enforcement action under the NYC FCA may only be brought by the Corporation Counsel or with the Corporation Counsel's permission. See id. § 7-804(e); Chen, 966 F. Supp. at 305.

### B. Relator Awards under the NYS FCA and NYC FCA

If a qui tam suit succeeds, the relator generally may receive a portion of the recovered funds.  Under the NYS FCA, there are three categories of award for relators.  First, an award of between 15 to 25 percent of the proceeds recovered is appropriate when the New York attorney general or a local government intervenes in a qui tam civil action or converts the action into a civil enforcement action. N.Y. STATE FIN. LAW § 190(6)(a).  Second, a court has discretion to award a maximum of 10 percent of the proceeds recovered when it finds that the qui tam civil action is based primarily on public disclosures of information. Id.  Last, a relator may receive between 25 and 30 percent of the proceeds recovered in a successful action if the attorney general or local government does not elect to intervene in or convert the action. Id. § 190(6)(b).

The NYS FCA permits the attorney general or a local government to pursue "any remedy available" with respect to false claims. Id. § 190(5)(c). For example, the attorney general or local government may decide that initiating an administrative proceeding or referring a medicaid-related matter to the office of the medicaid inspector may be the preferable remedy. See id. In the event that such an "alternate civil remedy" is pursued, a relator retains "the same rights in such proceeding as such person would have had if the action had continued under" the NYS FCA. Id. Similarly, the NYC FCA contains a provision that preserves the right of a relator to share in the proceeds recovered if an "alternate action" is pursued. See N.Y.C. ADMIN. CODE § 7-804(f)(2).

### III. Discussion

There is no dispute that the State and the City did not intervene in Khurana's original action or otherwise convert it to a civil enforcement action. Nevertheless, Khurana moves for a relator's share, arguing that the DPA and SAIC Settlement constitute an "alternate civil remedy" (under the NYS FCA) and an "alternate action" (under the NYC FCA), and that he is entitled to receive a percentage of the proceeds. The Court denies Khurana's motion because he is not entitled to share in an alternate civil remedy or an alternate action absent a valid qui tam claim.

At the outset, the Court is skeptical that the DPA and SAIC Settlement constitute an "alternate civil proceeding" under the NYS FCA or an "alternate action" under the NYC FCA.  Assuming that the contours of the state and city "alternate" provisions mirror those of the federal FCA's "alternate remedy" provision, lower courts appear divided on the question of whether a proceeding with criminal dimensions constitutes an "alternative remedy." Compare United States v. Kurlander, 24 F. Supp. 3d 417, 424 (D.N.J. 2014) (holding, under the circumstances, that "a criminal proceeding does not qualify as an alternate remedy" under the federal FCA); United States v. WellCare Health Plans, Inc., No. 8:09-CR-203-T-27EAJ, 2011 WL 4431157, at *1 (M.D. Fla. Sept. 21, 2011) (same); United States v. Lustman, Criminal No. 05-40082-GPM, 2006 WL 1207145, at *3 (S.D. Ill. May 4, 2006) ("Surely Congress would have explicitly specified criminal prosecutions as an 'alternate remedy' if it intended the result urged here."), with United States v. Bisig, 2005 WL 3532554, at *3–5 (S.D. Ind. Dec. 21, 2005) (holding that a criminal prosecution and criminal forfeiture proceeding constituted an alternate remedy and permitting award to relator).  However, even if the DPA and SAIC Settlement qualify as an alternate civil remedy under the NYS FCA or an alternate action under the NYC FCA, Khurana's claim to a relator's award must fail in the absence of a complaint asserting a valid qui tam claim.

11

Relying on the reasoning of several federal courts of appeals decisions analyzing the federal FCA,[3] several courts in this Circuit recently have held that a valid qui tam action is a prerequisite to a relator's right to recover an alternate remedy. See United States ex rel. Lee v. N. Adult Daily Health Care Ctr., 174 F. Supp. 3d 696, 704 (E.D.N.Y. 2016) ("[T]he right to recover an alternate remedy is dependent upon the existence of a valid qui tam action in which the relator is entitled to seek a recovery."); see also United States ex rel. Kolchinsky v. Moody's Corp., 12cv1399, 2017 WL 825478, at *8 (S.D.N.Y. Mar. 2, 2017) ("No alternate remedy is available here, however, because the Second Amended Complaint fails to state a valid FCA claim as a matter of law."); United States v. L-3 Commc'ns Eotech, Inc., No. 15-cv-9262 (RJS), 2017 WL 464431, at *4 (S.D.N.Y. Feb. 3, 2017) ("[A] relator cannot claim a share of an 'alternate remedy' unless he has an existing qui tam action, thereby providing the government with the option to intervene.").  This rule follows from a commonsense reading of the federal FCA:  if there is no valid qui tam action for the government to take over, then any remedial option that the

---

[3] See United States ex rel. Newell v. City of St. Paul, 728 F.3d 791, 799-800 (8th Cir. 2013); United States ex rel. Godfrey v. KBR, Inc., 360 F. App'x 407, 413 (4th Cir. 2010); United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 501 F.3d 493, 522 (6th Cir. 2007); United States ex rel. Hefner v. Hackensack Univ. Med. Ctr., 495 F.3d 103, 112 (3d Cir. 2007).

government might pursue is not, in fact, an "alternate" to taking over a qui tam action. See L-3 Commc'ns, 2017 WL 464431, at *3.  The logic is that, if a relator has no right to recovery in the original qui tam action, then the relator also lacks a right to recover in an "alternate remedy" scenario. See N. Adult Daily Health Care Ctr., 174 F. Supp. 3d at 703.  This logic applies with equal force to the NYS FCA. See id. at 704 ("Under the [NYS FCA], like the [federal] FCA, a relator only has a right to recovery if there is a valid qui tam action."). Accordingly, under the NYS FCA, a valid qui tam claim is a prerequisite to a relator's right to recover a portion of an alternate civil remedy.

 Khurana has not asserted a valid qui tam claim and he is not entitled to recover a portion of an alternate civil remedy. The Court previously held that the qui tam claims asserted in Khurana's second amended complaint were precluded by the NYS FCA's public disclosure bar or otherwise defective. (See Op. & Order, ECF. No. 70.)  Surely a qui tam claim is no longer "valid" once it has been dismissed. See L-3 Commc'ns, 2017 WL 464431, at *4-5 (finding that relator's voluntary dismissal of his qui tam suit precluded him from recovering, under "alternate remedy" theory, a portion of the proceeds the government ultimately obtained); see also N. Adult Daily Health Care Ctr., 174 F. Supp. 3d at 700 (finding relators' motion for a share of

proceeds recovered "premature" because a motion to dismiss the qui tam action was pending and, thus, relators "may ultimately lack a valid qui tam claim"). Because Khurana's qui tam claims have been dismissed, he has no right to recover any proceeds under § 190(6)(a) or § 190(6)(b) or under the NYS FCA's "alternate civil remedy" provision.

Khurana's claim based on the NYC FCA suffers the same infirmity as his claim based on the state statute. Although Khurana relies primarily on provisions of the NYS FCA, (see, e.g., Pl.'s Mem. at 1 n.1, 23-24, ECF No. 48), he also occasionally references the NYC FCA. (See id. at 1, 18 n.78; Pl.'s Reply Mem. of L. in Supp. of Mot. for Relator's Share at 4 n.9, ECF No. 54 (filed Apr. 15, 2016).) As noted previously, the qui tam claims Khurana brought under the NYS FCA and NYC FCA have been dismissed. Accordingly, there is no valid qui tam action upon which to base Khurana's claim to a share of proceeds recovered in an "alternate action."[4] It follows that Khurana is not entitled to a relator's share under the NYC FCA.

---

[4] Additionally, the Court notes that Khurana did not allege that he has received authorization from the Corporation Counsel to sue under the NYC FCA. This failure also undermines the validity of Khurana's qui tam claims under the NYC FCA. See Chen, 966 F. Supp. 2d at 305-06 (finding plaintiff's NYC FCA claim "deficient" due to failure to plead grant of authority from Corporation Counsel to sue).

In his papers, Khurana focuses partially on his "whistleblowing" activities prior to filing any qui tam complaint. (See, e.g., Pl.'s Mem. at 5, 7, 8-9, ECF No. 48.) As it relates to Khurana's motion for a relator's share, this focus is misplaced. See, e.g., Bledsoe, 501 F.3d at 522 ("Absent a valid complaint which affords a relator the possibility of ultimately recovering damages, there is no compelling reason for allowing a relator to recover for information provided to the government."). To the extent that this information is relevant, Khurana's pre-filing activities go to the question of whether he qualifies for an original source exception to the public disclosure bar, a matter that the Court has already decided. (See Op. & Order, ECF. No. 70.)

## CONCLUSION

For the reasons stated above, Khurana's motion for a relator's share is denied.

**SO ORDERED.**

Dated:   New York, New York
         March 28, 2017

John F. Keenan
United States District Judge