**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------X

THE STATE OF NEW YORK <u>EX REL</u>
VINOD KHURANA and THE CITY OF
NEW YORK <u>EX REL</u> VINOD KHURANA,

                              <u>Plaintiffs</u>,

     -against-


SPHERION CORP. (N/K/A SFN GROUP,
INC.)

                              <u>Defendant</u>.

-----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 04/21/2017

No. 15 Civ. 6605 (JFK)

**OPINION & ORDER**

<u>APPEARANCES</u>

FOR PLAINTIFF/RELATOR VINOD KHURANA:
     David Kovel, Esq.
     David Bishop, Esq.
     KIRBY McINERNEY LLP

     John R. Newcomer, Jr., Esq.
     Jillian Estes, Esq.
     JAMES, HOYER, NEWCOMER AND SMILJANICH, P.A.

FOR DEFENDANT SPHERION CORP.:
     Mark J. Hyland, Esq.
     Rita M. Glavin, Esq.
     Thomas Ross Hooper, Esq.
     SEWARD & KISSEL LLP

FOR THE CITY OF NEW YORK:
     Zachary W. Carter, Esq.
     Gail Rubin, Esq.
     Sabita Krishnan, Esq.
     Lilia Toson, Esq.
     CORPORATION COUNSEL OF THE CITY OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

On March 31, 2011, Plaintiff Vinod Khurana ("Plaintiff")

brought this action in New York State Supreme Court. Defendant

Spherion Corp. ("Spherion") removed the case to this Court in

August 2015.  On October 9, 2015, Spherion moved to dismiss the Second Amended Complaint ("SAC") pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure for failure to state a claim and failure to plead fraud with particularity.  On November 10, 2016, the Court granted in part Spherion's motion to dismiss as to Plaintiff's qui tam claims and denied Spherion's motion to dismiss as to Plaintiff's retaliation claims.  The Court dismissed Plaintiff's qui tam claims without prejudice but noted that it would only allow amendment if Plaintiff could demonstrate that he is "capable of curing the deficiencies in his qui tam claims and that justice requires granting leave to amend."  On December 12, 2016, Plaintiff moved for leave to file a Third Amended Complaint ("TAC").

For the reasons set forth below, Plaintiff's motion for leave to file a TAC ("motion to amend") is denied.

## I. Background

The Court presumes familiarity with the allegations made in Plaintiff's SAC and the procedural history of this litigation prior to the entry of its Opinion partially dismissing Plaintiff's claims.  See New York ex rel. Khurana v. Spherion Corp., No. 15 CIV. 6605 (JFK), 2016 WL 6652735 (S.D.N.Y. Nov. 10, 2016) [hereinafter "Op."].  Briefly stated, Plaintiff is a former employee of Spherion, a company that provided quality assurance services over CityTime—a project started by the Office

of Payroll Administration (the "OPA") in 1998 to automate time-keeping and payroll functions for New York City employees. (SAC ¶¶ 9, 13.) Science Applications International Corporation ("SAIC") took over as the prime contractor on CityTime in 2002 and Spherion was engaged to perform certain quality assurance functions over SAIC. (Id. ¶¶ 14-15, 22.)

Spherion hired Mark Mazer and Scott Berger as consultants on CityTime and they began work on the project in 2005. (Id. ¶¶ 3, 31.) In 2006, SAIC's prime contract was amended from a fixed-price contract to a fixed-price level-of-effort contract, which significantly increased the amount of compensable consulting staffing on the project. (Id. ¶ 18.) With access to additional consultant funding, Mazer used his position to award lucrative contracts to companies controlled by friends or family members in exchange for kickbacks. (Id. ¶ 19.)

Plaintiff claims that, in his position as a load performance tester, he began noticing performance problems with the CityTime software in late 2004. (Id. ¶ 29.) From 2004 to 2005, Plaintiff alleges that he told individuals at the Financial Information Services Agency ("FISA") on multiple occasions that the program would not support the number of users required and that Mazer and Berger had told him they knew the project was going to fail. (Id. ¶ 32.) Plaintiff claims that "on numerous occasions" he also told Spherion representatives

about "serious problems" with CityTime, but Spherion "continued with the project as if those problems did not exist" and continued billing the City of New York (the "City") without taking any action to remove Mazer and Berger. (Id. ¶¶ 34, 36.) Further, Plaintiff alleges that he "personally witnessed or developed knowledge of various other examples of suspicious or outright fraudulent conduct," including billing the CityTime contract for services that were either prohibited, unnecessary, or not provided. (Id. ¶ 45.) Plaintiff claims that he was retaliated against and ultimately terminated in May 2007 for communicating to Spherion and FISA that performance was poor and the project was failing. (Id. ¶ 58.)

In early 2009, Plaintiff drafted a "detailed complaint memorializing his direct knowledge of the fraud," mailed it to the New York City Department of Investigations ("DOI"), and posted it online as a CNN "iReport." (Id. ¶ 62.) Plaintiff claims that after sending the DOI complaint he "went on an extensive campaign to call as much public attention as possible to the fraud," including posting an "extensive series of comments on articles on the New York Daily News website that exposed the inner-workings of the CityTime contract in great detail." (Id. ¶ 63.) Plaintiff alleges that he met with DOI investigators in "December 2010 and thereafter" and provided "a

full accounting of his knowledge and experiences on the CityTime project." (Id. ¶ 64.)

The New York news media began publishing articles discussing problems with CityTime in 2004, with increased frequency in 2009 and 2010. (See Aff. of Mark J. Hyland Ex. 9.) The project also received scrutiny from public officials, including the New York City Council and the Office of the Comptroller. (See Hyland Aff. Exs. 20, 22.)  On December 15, 2010, the U.S. Attorney's Office for the Southern District of New York and the DOI jointly unsealed a 35-page criminal complaint (the "Criminal Complaint") and announced charges against six individuals connected to CityTime including Mark Mazer and Scott Berger. (See Hyland Aff. Exs. 7, 8.)

Plaintiff brought this action on behalf of the City and the State of New York (the "State"), alleging that Spherion is liable under the New York False Claims Act ("NYS FCA") and the New York City False Claims Act ("NYC FCA") for the submission of false claims to the City. (SAC ¶ 1.)  Plaintiff alleges that "[b]ut for Spherion's failure to execute the responsibilities inherent in its contract with the OPA, Mazer and Berger would not have been able to perpetuate their fraudulent kickback schemes." (Id. ¶ 67.)  "As a result of this failure to satisfy its contractual obligation," Plaintiff asserts that "every claim for reimbursement pursuant to the quality assurance contract

with the City," which totals an estimated $48 million, "was a false or fraudulent claim." (Id.)

Plaintiff advances four theories on which he claims Spherion is liable under the NYS FCA and NYC FCA: First, Plaintiff contends that Spherion is vicariously liable under its contract with the OPA for Mazer and Berger's acts in "steering billable work to their own entities then inflating and falsifying timesheets" (the "vicarious liability claims"). (Pl.'s Mem. of L. in Opp. to Def.'s Mot. to Dismiss at 10.) Second, Plaintiff argues that Spherion submitted false claims to the City because it "failed to provide quality assurance services" as required by its contract with the OPA (the "quality assurance claims"). (Id. at 11.) Third, Plaintiff asserts that Spherion is liable because it violated the conflict of interest provision of its contract with the OPA by employing Mazer and Berger (the "conflict of interest claims"). (Id. at 13-14.) Fourth, Plaintiff argues that Spherion is liable for engaging in certain false billing practices (the "false billing claims"). (Id. at 14-15.) Plaintiff also alleges claims for retaliation under the NYS FCA and NYC FCA. (SAC ¶¶ 74-77.)

### A. Dismissal of Plaintiff's Qui Tam Claims in the SAC

In its November 10, 2016 Order (the "Order"), the Court granted in part Defendant's motion to dismiss as to Plaintiff's qui tam claims. First, the Court dismissed Plaintiff's

vicarious liability claims as barred by the public disclosure
bars of the NYS FCA and NYC FCA because Plaintiff does not
qualify as an original source. (Op. at 34.)  Second, the Court
dismissed Plaintiff's quality assurance claims and conflict of
interest claims for failure to state claims under the NYS FCA
and NYC FCA. (<u>Id.</u> at 38-39.)  Third, the Court dismissed
Plaintiff's false billing claims for failing to comply with the
heightened pleading standard of Rule 9(b). (<u>Id.</u> at 42.)  The
Court denied Spherion's motion to dismiss Plaintiff's
retaliation claims. (<u>Id.</u> at 49.)

### B.    Proposed Third Amended Complaint

On December 12, 2016, Plaintiff filed his proposed TAC.
The TAC contains "newly alleged information" from documentary
discovery produced by the City that Plaintiff claims was
unavailable when he filed the SAC. (Pl.'s Mem. of Law in Support
of Mot. for Leave to File Proposed TAC at 1) [hereinafter Mot.
to Amend.]  These new allegations include, among other things,
that (1) concealing the lack of progress on CityTime was an
integral part of the kickback fraud, (2) two newly discovered e-
mails show that "Plaintiff's disclosures to [FISA] were
contemporaneous with" the kickback fraud, (3) Plaintiff's 2009
iReport "ascribed scienter to Mazer and Berger," (4) Plaintiff's
2010 comments on the <u>Daily News</u> website explicitly disclosed the
fact that Mazer had illicit ties to DA Solutions, (5) government

investigators closely reviewed Plaintiff's comments on the Daily
News website and found them to be "very helpful" and
"interesting", (6) Spherion did not provide any QA services as
required by its contract, and (7) Spherion's QA contract was not
a "one-time contractual promise" but rather a "representation
that a current state of fact existed." (Id. at 2-8.) According
to Plaintiff, these new allegations successfully address the
deficiencies in the SAC and will survive a motion to dismiss.
(Id. at 2.)

## II.    Discussion

### A.    Legal Standard

Leave to amend a pleading should be freely granted when
justice so requires. FED. R. CIV. P. 15(a); Dluhos v. Floating &
Abandoned Vessel, 162 F.3d 63, 69 (2d Cir. 1998). "Nonetheless,
the Court may deny leave if the amendment (1) has been delayed
unduly, (2) is sought for dilatory purposes or is made in bad
faith, (3) the opposing party would be prejudiced, or (4) would
be futile." Lee v. Regal Cruises, Ltd., 916 F. Supp. 300, 303
(S.D.N.Y. 1996). A proposed amended complaint is futile when it
"fails to state a claim." Kuriakose v. Fed. Home Loan Mortg.
Corp., 897 F. Supp. 2d 168, 176 (S.D.N.Y. 2012). "The Proposed
Amended Complaint may therefore be scrutinized as if defendants'
objections to the amendments constituted a motion to dismiss
under Fed. R. Civ. P. 12(b)(6)." Journal Publ'g Co. v. Am. Home

<u>Assurance Co.</u>, 771 F. Supp. 632, 635 (S.D.N.Y. 1991).  District

courts have broad discretion in ruling on a motion to amend.

<u>Kuriakose</u>, 897 F. Supp. 2d at 176.

Accordingly, in evaluating Plaintiff's motion to amend, the

Court will consider whether the proposed TAC cures the

deficiencies that the Court identified in the SAC.  Should the

proposed TAC fail to cure these deficiencies, leave to amend

will be denied as futile.  <u>See</u> <u>Health-Chem Corp. v. Baker</u>, 915

F.2d 805, 810 (2d Cir. 1990) ("Although Fed. R. Civ. P. 15(a)

provides that leave to amend should be given freely when justice

so requires, where, as here, there is no merit in the proposed

amendments, leave to amend should be denied.").  The Court will

evaluate the proposed amendments to Plaintiff's four types of

<u>qui</u> <u>tam</u> claims in turn.

### B.    Vicarious Liability Claims

### 1.    Dismissal Under the Public Disclosure Bar

To proceed, a <u>qui</u> <u>tam</u> action must overcome the public

disclosure bars of the NYS FCA and NYC FCA, which mirror the

public disclosure provisions of the federal FCA.  The public

disclosure bars provide a basis for dismissal under Rule

12(b)(6) for failure to state a claim.[1]  Accordingly, the Court

---

[1] In the Order, the Court joined the weight of authority
interpreting the federal FCA and held that the public disclosure
provisions of the NYS FCA and NYC FCA provide a basis for
dismissal under Rule 12(b)(6). (<u>See</u> Op. at 27.)

9

generally may not consider affidavits and other matters outside the pleadings, but may take judicial notice of the fact that press coverage and judicially noticeable public records contained certain information, without regard to the truth of their contents. See Ping Chen ex rel. U.S. v. EMSL Analytical, Inc., 966 F. Supp. 2d 282, 294 (S.D.N.Y. 2013) (citing Staehr v. Hartford Fin. Servs. Group, Inc., 547 F.3d 406, 425 (2d Cir. 2008)).  The Court may also consider documents incorporated by reference in the complaint and documents that are "integral" to the complaint because the plaintiff "relies heavily upon [their] terms and effect." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

The NYS FCA and NYC FCA establish a two-part test for the public disclosure bar. N.Y. STATE FIN. LAW § 190(9)(b); N.Y.C. ADMIN. CODE § 7-804(d); see also Chen, 966 F. Supp. 2d at 296-97. A court must first determine if "substantially the same" allegations or transactions in the action were publicly disclosed.  If that is the case, the action must be dismissed unless the plaintiff qualifies as an "original source."

Under the NYS FCA and NYC FCA, a plaintiff can qualify as an original source in two ways.  First, the plaintiff is an original source if, prior to a qualifying public disclosure, he "voluntarily disclosed to the state or a local government the

10

information on which allegations or transactions in a cause of action are based." N.Y. STATE FIN. LAW § 188(7); see also N.Y.C. ADMIN. CODE § 7-802(6). Second, the plaintiff is an original source if he has knowledge that is "independent of" and "materially adds to" the publicly disclosed allegations or transactions, and has provided such information to the state or local government. N.Y. STATE FIN. LAW § 188(7); see also N.Y.C. ADMIN. CODE § 7-802(6). The NYS FCA includes an additional requirement that the information must have been provided before or at the time that the plaintiff filed suit. N.Y. STATE FIN. LAW § 188(7).

In dismissing the SAC, the Court found that Plaintiff's vicarious liability claims are barred by the public disclosure bar because substantially the same allegations were publicly disclosed and Plaintiff does not qualify as an original source under either method described above. (Op. at 28-34.) As to the first method, the Court held that Plaintiff did not plausibly allege that the information he provided is the information on which his vicarious liability claims are based because Plaintiff's disclosures "relat[ed] to his load test discovery of the CityTime software's inability to support more than 20 parallel users at a time," and not to Mazer and Berger's fraudulent kickback and overbilling scheme. (Id. at 33.) As to the second method, the Court held that nothing in the complaint

or documents incorporated by reference demonstrated that
Plaintiff had knowledge that adds in a material way to the
"ample information publicly disclosed." (Id. at 34.)

### 2. Analysis

Plaintiff does not argue that the amended allegations in
the TAC in any way change the Court's decision that Plaintiff's
claims are "substantially the same" as the public disclosures
discussed in the Order.  Thus, the only question is whether the
amended allegations cure the deficiencies in Plaintiff's
vicarious liability claims and show that Plaintiff qualifies as
an original source.

In his motion to amend, Plaintiff makes three principal
arguments regarding the first method for qualifying as an
original source, each pertaining to alleged disclosures in 2004,
2009, and 2010.  Plaintiff also argues that his disclosures to
the DOI in 2010 qualify him as an original source under the
second method because they provided information that materially
adds to the publicly disclosed allegations.  The Court will
address each argument in turn.

### i.    Plaintiff's 2004 Disclosures to FISA Do Not Qualify Him as an Original Source

In his motion to amend, Plaintiff focuses on the Court's
statement that Plaintiff's disclosures to FISA in 2004 did not
qualify him as an original source because they could not have

related to Mazer's kickback fraud, which began in 2005 or 2006. (Mot. to Amend at 2.) Plaintiff argues that the TAC "mak[es] clear" that Mazer's kickback fraud was part of the larger fraud initiated in 2003 and that Mazer "conceal[ed] from the City the lack of progress being made on CityTime as a necessary antecedent to the kickback fraud." (Id.; see also TAC ¶¶ 15-25.) Plaintiff argues that these amended allegations show that the information Plaintiff disclosed to FISA is "the sort of information" on which his vicarious liability claims are based because the kickback fraud involved delaying the deployment and implementation of the Project. (Mot. to Amend at 3.)

Plaintiff also alleges that two newly discovered e-mails show that Plaintiff was an original source of the information underlying his fraud claims. (Id.) On April 15, 2005, FISA's Sue Amodeo e-mailed Plaintiff requesting a "confidential chat about the perf[ormance] test plan." (TAC ¶ 39.) On May 3, 2005, Berger e-mailed Mazer regarding a meeting with Amodeo stating that "everyone [felt] comfortable with the performance testing plan as it is" but the "real problem is that the application is not ready for performance testing as it is." (Id. ¶ 40.)

Plaintiff's focus on the timing of Mazer's kickback scheme is misplaced. Even if Mazer's fraud scheme began in 2004 and "concealing the lack of progress on CityTime[] was an integral part of the kickback fraud," (Mot. to Amend at 3), this does not

change the fact that Plaintiff's alleged disclosures to FISA
related only to load test results and CityTime's performance.
(See Op. at 33.)  Further, the two e-mails Plaintiff cites in
the TAC allege only that Amodeo and Plaintiff discussed
CityTime's performance issues and that Mazer and Berger knew
that there were deficiencies in CityTime's performance,
information that was already before this Court when it decided
Spherion's motion to dismiss.  Thus, Plaintiff fails to
adequately allege that his 2004 disclosures to FISA contained
any information regarding the kickback and false billing scheme
and these disclosures do not qualify him as an original source.

### ii.     Plaintiff's 2009 iReport Does Not Qualify Him as an Original Source

The Court also held that Plaintiff's complaint to the DOI
in 2009 did not qualify him as an original source. (Id.)
Plaintiff claims that the TAC adds allegations showing that the
2009 iReport "ascribed scienter" to Mazer and Berger because it
identified (1) the directive "NOT to 'bad' mouth the project"
and that "management KNEW very well this [CityTime] was going to
be a complete failure" and (2) "the obscene featherbedding of
consultant positions with overly generous hourly rates." (TAC ¶¶
77-78.)  But Plaintiff simply re-characterizes the same
allegations that were before this Court in deciding Spherion's
motion to dismiss.  Plaintiff admits in his motion to amend that

the iReport is "identically worded" to the DOI complaint. (Mot. to Amend at 3.)  The Court has already considered the DOI complaint in its entirety and held that it lacked "any information regarding the alleged kickback and false billing scheme on which Plaintiff's vicarious liability claims are based." (Op. at 33.)  Accordingly, Plaintiff has failed to allege that the iReport qualifies him as an original source.

### iii.  Plaintiff's 2010 Daily News Commentary Does Not Qualify Him as an Original Source

Plaintiff claims that his "extensive series of comments" on the New York Daily News website in 2010 qualifies him as an original source. (Mot. to Amend at 4.)  Although the Court did not specifically address the Daily News comments in its public disclosure bar analysis, this document was before the Court on Spherion's motion to dismiss. (See Hyland Aff. Ex. 11.) Plaintiff argues that the TAC adds "new allegations" regarding these 2010 comments, including a direct quote:  "A company by the name of DS Solutions should also be investigated to determine if there were any ties between it's owner (supplier of contracts) and Mark Mazer." (Mot. to Amend at 4; TAC ¶ 81.) Plaintiff claims that this comment "explicitly disclose[d] the fact that Mazer had illicit ties to DA Solutions." (Mot. to Amend at 4.)  Plaintiff also adds allegations that individuals at FISA, the DOI, and "U.S. prosecutors" read the comments and

that the DOI did not "separately uncover the connection between Mazer and DA Solutions until June 2010, two months after [Plaintiff]'s commentary reached the Comptroller investigator and FISA senior management." (Id. at 4-5.)

The 2010 Daily News comments also fail to qualify Plaintiff as an original source. Plaintiff's comments contain the same vague and conclusory language that appears in his 2009 iReport, (see Op. at 33), and primarily repeat his claims that Mazer and Berger knew that CityTime was going to fail. (See Hyland Aff. Ex. 11.) Plaintiff's comment that "[a] company by the name of DS Solutions should also be investigated to determine if there were any ties between it's owner . . . and Mark Mazer" did not, as Plaintiff argues, "explicitly disclose[] the fact that Mazer had illicit ties to DA Solutions," but merely put forth Plaintiff's opinion that DA Solutions should be investigated. Even if government officials read Plaintiff's Daily News comments prior to uncovering the connection between Mazer and DA Solutions, Plaintiff's vague comments about investigating DA Solutions did not disclose any widespread fraudulent kickback or overbilling scheme and thus did not provide the government with the information supporting his vicarious liability claims.

Plaintiff has failed to show that any of his disclosures provided the information on which his vicarious liability claims

are based and thus has failed to show that he qualifies as an original source under the first method described above.

### iv. Plaintiff's 2010 Disclosures to the DOI Do Not Materially Add to the Publicly Disclosed Allegations or Transactions

The second method by which Plaintiff may qualify as an original source is if he has knowledge that is "independent of" and "materially adds to" the publicly disclosed allegations and transactions and has provided such information to the government. Plaintiff argues that the TAC newly demonstrates that his disclosures to the DOI in late 2010 materially added to the publicly disclosed allegations because the DOI and federal prosecutors found Plaintiff's disclosures to be "very helpful" and "interesting" and regarded his disclosure about the connection between DA Solutions and Mazer to be an "important recollection." (TAC ¶¶ 88–89.) Plaintiff alleges that one DOI investigator "sought a second interview with [Plaintiff] in order to question him about emails concerning consultants billing CityTime for work done on the unrelated CHARMS program." (Id. ¶ 89.) Plaintiff argues that due to his disclosures, "the scope of the fraud alleged by the government in its superseding indictment was enlarged to include a more general fraud to 'artificially delay the deployment and implementation of the Project' that was not alleged" in the Criminal Complaint. (Mot. to Amend at 6 (citing TAC ¶¶ 17, 25).)

Plaintiff's new allegations do not adequately plead that Plaintiff's late 2010 disclosures to the DOI materially added to the publicly disclosed allegations.  Where a complaint's allegations are "not much different" from the allegations or transactions of the public disclosures, they cannot be said to materially add to the publicly-disclosed fraud. Chen, 966 F. Supp. 2d at 300; see also U.S. ex rel. Reagan v. E. Texas Med. Ctr. Reg'l Healthcare Sys., 384 F.3d 168, 179 (5th Cir. 2004) (considering whether "the investigation or experience of the relator either . . . translate[d] into some additional compelling fact, or . . . demonstrate[d] a new and undisclosed relationship between disclosed facts, that puts a government agency 'on the trail' of fraud").

First, the allegations that investigators found Plaintiff's disclosures to be "very helpful" and "interesting" do not identify any of the actual information that Plaintiff provided to investigators or establish that the information he provided was in any way different from the information that was already available to the investigators.  Second, even if an investigator sought a second interview with Plaintiff regarding e-mails about consultant billing on an unrelated project and found Plaintiff's information regarding Mazer and DA Solutions to be an "important recollection," this information would not materially add to the publicly disclosed allegations.  As the Court noted in the

Order, "the Criminal Complaint disclosed detailed allegations regarding Mazer and Berger's fraud before Plaintiff brought this suit" including Mazer's execution of the kickback scheme involving DA Solutions and the "blatant fraud" in connection with timesheets that Mazer and Berger approved. (Op. at 8, 34.) Plaintiff has not shown that his disclosures in any way materially added to the "ample information publicly disclosed" regarding Spherion's alleged vicarious liability. (Id. at 34.)

Finally, Plaintiff's argument that, due to his disclosures, the scope of the alleged fraud was enlarged in the superseding indictment "to include a more general fraud" to prolong the implementation of the project that was not included in the Criminal Complaint is unavailing. The Criminal Complaint disclosed a fraud scheme executed through contract amendments and extensions that allowed additional consultant staffing and caused a dramatic increase in billing. (See Criminal Compl. ¶¶ 19-22.) Plaintiff's purported disclosures to the DOI regarding the delay in implementation of the project did not reveal some additional compelling fact or demonstrate "an undisclosed relationship between disclosed facts" that was not already alleged in the Criminal Complaint. See Reagan, 384 F.3d at 179.

Thus, Plaintiff's 2010 disclosures to the DOI did not materially add to the publicly disclosed allegations and

Plaintiff does not qualify as an original source under the second method.

Plaintiff has failed to show that he qualifies as an original source and thus his motion to amend his vicarious liability claims is denied.

### C. Conflict of Interest Claims

### 1.    Plausibility of FCA Claims

To state a claim under the NYS FCA or NYC FCA, a plaintiff must plausibly allege that the defendant submitted a claim to the government that was "false or fraudulent." N.Y. STATE FIN. LAW § 189(1); N.Y.C. ADMIN. CODE §§ 7-802(4), 7-803(a)(1)-(2).  Courts in this Circuit have recognized three cognizable theories under which a claim may be false or fraudulent. U.S. ex rel. Kolchinsky v. Moody's Corp., No. 12CV1399, 2017 WL 825478, at *4-5 (S.D.N.Y. Mar. 2, 2017).  The archetypal FCA claim involves a request for payment that is "factually false." Id. at *4.  A factually false claim "involves an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." Mikes v. Straus, 274 F.3d 687, 697 (2d Cir. 2001), abrogated on other grounds by Universal Health Servs., Inc. v. United States, 136 S. Ct. 1989 (2016).

There are also two cognizable theories of "legally false" FCA liability:  express false certification and implied false certification.  These theories apply where, in connection with a

request for payment, a defendant falsely certifies its
compliance with a federal statute, regulation, or contractual
provision containing a material condition for government
payment. Universal Health, 136 S. Ct. at 1999; Mikes, 274 F.3d
at 698.  An express false certification involves a defendant's
express representation of compliance when it is actually not
compliant. Mikes, 274 F.3d at 698.  The implied false
certification theory is based on the idea that a contractor may
impliedly certify compliance with material statutory,
regulatory, or contractual conditions for government payment
when requesting reimbursement. Universal Health, 136 S. Ct. at
1995; Mikes, 274 F.3d at 699.  Recently, the U.S. Supreme Court
held that the implied false certification theory is viable where
two conditions are met:  (1) "the claim does not merely request
payment, but also makes specific representations about the goods
or services provided;" and (2) "the defendant's failure to
disclose noncompliance with material statutory, regulatory, or
contractual requirements makes those representations misleading
half-truths." Universal Health, 136 S. Ct. at 2001.

In the SAC, Plaintiff alleged that Spherion is liable under
an express false certification theory because it breached the
conflict of interest provisions in its contract with the City by
employing Mazer and Berger. (SAC ¶ 24; Pl.'s Mem. of L. in Opp.
to Def.'s Mot. to Dismiss at 11 n.9.).  The Court held that

Plaintiff failed to allege a viable express or implied false certification theory because the "express false certification theory applies not to a breach of a contractual provision itself, but instead to a false certification of contractual, statutory, or regulatory compliance made in connection with a claim submission." (Op. at 39). Plaintiff did not allege that Spherion expressly certified compliance with any provision of its contract with the OPA in connection with a claim or set forth any specific representation made in connection with a claim that was rendered materially misleading by Spherion's alleged contractual breach. (Id.)

## 2. Analysis

The TAC fails to cure this pleading deficiency. Plaintiff merely adds the contention that the conflict-of-interest provision was not a "one-time contractual promise" but rather a "representation that a current state of fact existed." (Mot. to Amend at 8; TAC ¶ 64.) Plaintiff further states that "[w]ith each amendment, Spherion was recertifying its compliance with the Conflict of Interest provision . . . at a time when Spherion knew . . . that Mazer, DA Solutions and Primeview had a conflict of interest." (TAC ¶ 65.) These "new allegations" merely attempt to re-paint Plaintiff's original conflict of interest claims by stating that the conflict-of-interest provision was actually a "representation." But despite this re-

characterization, Plaintiff has still failed to allege that Spherion falsely certified compliance or made any materially-misleading representations in connection with an actual claim for payment. Thus, Plaintiff has failed to allege a viable express or implied false certification theory and Plaintiff's motion to amend his conflict of interest claims is denied.

### D. Quality Assurance Claims

Plaintiff alleged in the SAC that Spherion submitted false claims to the City because it "failed to provide quality assurance services" as required by its contract with the OPA when it failed to "disclose the abysmal lack of progress in development of CityTime as a general matter." (Pl.'s Mem. of L. in Opp. to Mot. to Dismiss at 11–12.) The Court held that Plaintiff failed to allege a theory of factual falsity with regards to the quality assurance claims because "Plaintiff does not allege that Spherion actually failed to provide the quality assurance services for which it claimed reimbursement, or that it provided an incorrect description of those services." (Op. at 37.) The Court also held that Plaintiff failed to allege a theory of implied false certification because Plaintiff neither alleged that Spherion made any specific representations about the services provided, nor explained how any such representation was rendered a misleading half-truth by Spherion's alleged noncompliance. (Id. at 38.)

Plaintiff amends his quality assurance claims in the TAC and claims that "[d]espite having provided no bona fide quality assurance services, Spherion presented the City with claims for payment for those services throughout the period of the fraud." (TAC ¶ 61.) Plaintiff alleges that Spherion "transfer[red]" its quality assurance obligations to parties "who could not be expected to evaluate their own performance, had a conflict of interest as defined by the QA contract, and were actively working to delay the implementation of CityTime for their own benefit." (Id. ¶ 60.) Plaintiff argues that claims for payment for quality assurance services were also impliedly false because Spherion failed to disclose its noncompliance with the conflict of interest requirements of the contract. (Mot. to Amend at 7.)

Liberally construed, these amended allegations cure the deficiency identified by the Court and raise a plausible theory of factual falsity. Essentially, Plaintiff alleges that Spherion presented claims for payment for quality assurance services that it did not actually provide, but outsourced to conflicted parties. However, Plaintiff's quality assurance claims must also satisfy Rule 9(b)'s heightened pleading requirement.

### 1. Rule 9(b)'s Heightened Pleading Standard

A plaintiff alleging false claims under the NYS FCA or the NYC FCA must plead with particularity the circumstances

constituting fraud in accordance with Federal Rule of Civil Procedure 9(b). <u>See</u> <u>Gold v. Morrison-Knudsen Co.</u>, 68 F.3d 1475, 1476–77 (2d Cir. 1995). The purpose of this requirement is "to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, . . . to protect a defendant against the institution of a strike suit, [and] . . . . to discourage the filing of complaints as a pretext for discovery of unknown wrongs." <u>Wood ex rel. U.S. v. Applied Research Assocs., Inc.</u>, 328 F. App'x 744, 747 (2d Cir. 2009) (internal citation and quotation marks omitted).

To satisfy Rule 9(b), "a complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" <u>Id.</u> (quoting <u>Shields v. Citytrust Bancorp, Inc.</u>, 25 F.3d 1124, 1128 (2d Cir. 1994)). "In other words, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." <u>U.S. ex rel. Polansky v. Pfizer, Inc.</u>, No. 04-cv-0704 (ERK), 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009) (internal quotation marks omitted).

In addition to adequately explaining why the claims were fraudulent, to comply with Rule 9(b), a plaintiff must also plead the submission of false claims with a high enough degree

of particularity that the defendant can reasonably identify the claims at issue.  See U.S. ex rel. Kester v. Novartis Pharm. Corp., 23 F. Supp. 3d 242, 257 (S.D.N.Y. 2014) (collecting cases).  "In cases with extensive schemes, plaintiffs can satisfy this requirement in two ways:  (1) providing sufficient identifying information about all the false claims, or (2) providing example false claims." Id. at 258.  Examples of the kind of identifying information a plaintiff can provide to satisfy Rule 9(b) include:  dates of claims, contents of claims, identification numbers, reimbursement amounts, goods or services provided, and individuals involved in the billing. Id.

### 2. Analysis

Plaintiff's amended quality assurance claims fail to meet Rule 9(b)'s heightened pleading standards.  To comply with Rule 9(b), a plaintiff must plead the submission of false claims with a high enough degree of particularity that the defendant can reasonably identify the claims at issue. See Kester, 23 F. Supp. at 257.  Plaintiff alleges in the TAC that "any claim[s] for payment made to the City between 2004 and 2010" for quality assurance services "were false claims." (TAC ¶ 62.)  But this general assertion fails to set forth the "who, what, when, where and how of the alleged fraud."  Nowhere does Plaintiff provide identifying information about these claims for payment—including who submitted the claims, what the claims requested payment for,

or when they were submitted—nor does Plaintiff provide any example claims.  Thus, Plaintiff fails to comply with Rule 9(b) and the motion to amend the quality assurance claims is denied.

### E.   False Billing Claims

In the SAC, Plaintiff alleged that Spherion billed for certain services it did not actually provide, including, among other things, "[b]illing the CityTime contract for two-week severance packages paid to terminated Spherion consultants." (SAC ¶ 45.)  In the Order, the Court held that Plaintiff plausibly alleged claims of "false billing practices" but failed to meet Rule 9(b)'s heightened pleading standard. (Op. at 40-42.)  First, Plaintiff's allegations failed to set forth the "who, what, when, where and how of the alleged fraud" because they left unclear who was involved in submitting the claims, what the claims requested payment for, or when they were submitted. (See id. at 42.)  Second, Plaintiff failed to either provide identifying information about the claims that were submitted or provide example false claims. (Id.)

### 1.   Analysis

Plaintiff's TAC fails to cure this pleading deficiency. The only allegations Plaintiff adds to the TAC regarding fraudulent billing are that "[d]espite having provided no bona fide quality assurance services, Spherion presented the City with claims for payment for those services throughout the period

of the fraud" and "any claim[s] for payment that Spherion made to the City following the 2005 amendments" to the contract with the OPA are "false claims" due to Spherion's conflicts of interest. (TAC ¶¶ 61, 65.) Neither of these additions make clear when these claims were submitted, what they requested payment for, or who was involved in submitting the claims. Further, Plaintiff provides no example false claims or any identifying information regarding said false claims. Accordingly, Plaintiff has failed to meet the heightened pleading standard of Rule 9(b) and Plaintiff's motion to amend his false billing claims is denied.

### CONCLUSION

For the reasons stated above, Plaintiff's motion to amend is DENIED and Plaintiff's qui tam claims are dismissed with prejudice. Spherion shall file its answer to Plaintiff's remaining retaliation claims no later than 14 days from the date of this Opinion.

**SO ORDERED.**

Dated:  New York, New York
        April 2 1 , 2017

_____
JOHN F. KEENAN
United States District Judge