**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X

THE STATE OF NEW YORK <u>EX REL</u>
VINOD KHURANA and THE CITY OF
NEW YORK <u>EX REL</u> VINOD KHURANA,

                         <u>Plaintiffs</u>,

    -against-

SPHERION CORP. (N/K/A SFN GROUP,
INC.),

                         <u>Defendant</u>.

------------------------------------X

| | |
|---|---|
| USDC SDNY | |
| DOCUMENT | |
| ELECTRONICALLY FILED | |
| DOC #: _____ | |
| DATE FILED: __6/20/2018__ | |

No. 15 Civ. 6605 (JFK)

**OPINION & ORDER**

<u>APPEARANCES</u>

FOR PLAINTIFF/RELATOR VINOD KHURANA:
    David E. Kovel, Esq.
    David A. Bishop, Esq.
    KIRBY McINERNEY LLP

FOR DEFENDANT SPHERION CORP.:
    Mark J. Hyland, Esq.
    Rita M. Glavin, Esq.
    Thomas Ross Hooper, Esq.
    SEWARD & KISSEL LLP

FOR THE CITY OF NEW YORK:
    Zachary W. Carter, Esq.
    Gail Rubin, Esq.
    Sabita Krishnan, Esq.
    Lilia Toson, Esq.
    CORPORATION COUNSEL OF THE CITY OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

Plaintiff Vinod Khurana ("Plaintiff") moves the Court pursuant to Federal Rule of Civil Procedure 54(b) for entry of this Court's Opinions and Orders dismissing Plaintiff's <u>qui</u> <u>tam</u> claims and denying Plaintiff leave to amend his <u>qui</u> <u>tam</u> claims—dated November 10, 2016 and April 21, 2017, respectively

1

(together, the "Orders")—as final judgments, and to stay

litigation of Plaintiff's remaining retaliation claims pending

the appeal from the Orders.  For the reasons stated below,

Plaintiff's motion is denied.

## I.   Background

### A.   Factual Background

The Court presumes familiarity with the factual background

of this case that was laid out extensively in the Orders.  (See

ECF Nos. 70, 86.)  Briefly stated, Plaintiff is a former

employee of Defendant Spherion Corp. ("Spherion"), a company

that provided quality assurance services over CityTime—a project

started by the Office of Payroll Administration (the "OPA") in

1998 to automate time-keeping and payroll functions for New York

City employees. (Second Amended Complaint ¶¶ 9, 13 [hereinafter

SAC].)  Science Applications International Corporation ("SAIC")

took over as the prime contractor on CityTime in 2002 and

Spherion was engaged to perform certain quality assurance

functions over SAIC. (Id. ¶¶ 14-15, 22.)

Spherion hired Mark Mazer and Scott Berger as consultants

on CityTime and they began work on the project in 2005. (Id.

¶¶ 3, 31.)  In 2006, SAIC's prime contract was amended from a

fixed-price contract to a fixed-price level-of-effort contract,

which significantly increased the amount of compensable

consulting staffing on the project. (Id. ¶ 18.)  With access to

2

additional consultant funding, Mazer used his position to award lucrative contracts to companies controlled by friends or family members in exchange for kickbacks. (Id. ¶ 19.)

Plaintiff claims that, in his position as a load performance tester, he began noticing performance problems with the CityTime software in late 2004. (Id. ¶ 29.)  From 2004 to 2005, Plaintiff alleges that he told individuals at the Financial Information Services Agency ("FISA") on multiple occasions that the program would not support the number of users required and that Mazer and Berger had told him they knew the project was going to fail. (Id. ¶ 32.)  Plaintiff claims that "on numerous occasions" he also told Spherion representatives about "serious problems" with CityTime, but Spherion "continued with the project as if those problems did not exist" and continued billing the City of New York (the "City") without taking any action to remove Mazer and Berger. (Id. ¶¶ 34, 36.) Further, Plaintiff alleges that he "personally witnessed or developed knowledge of various other examples of suspicious or outright fraudulent conduct," including billing the CityTime contract for services that were prohibited, unnecessary, or not provided. (Id. ¶ 45.)  Plaintiff claims that he was retaliated against and ultimately terminated in May 2007 for communicating to Spherion and FISA that performance was poor and the project was failing. (Id. ¶ 58.)

In early 2009, Plaintiff drafted a "detailed complaint memorializing his direct knowledge of the fraud," mailed it to the New York City Department of Investigations ("DOI"), and posted it online as a CNN "iReport." (Id. ¶ 62.)  Plaintiff claims that after sending the DOI complaint he "went on an extensive campaign to call as much public attention as possible to the fraud," including posting an "extensive series of comments on articles on the New York Daily News website that exposed the inner-workings of the CityTime contract in great detail." (Id. ¶ 63.)  Plaintiff alleges that he met with DOI investigators in "December 2010 and thereafter" and provided "a full accounting of his knowledge and experiences on the CityTime project." (Id. ¶ 64.)

The New York news media began publishing articles discussing problems with CityTime in 2004, with increased frequency in 2009 and 2010. (See Hyland Aff. Ex. 9.)  The project also received scrutiny from public officials, including the New York City Council and the Office of the Comptroller. (See Hyland Aff. Exs. 20, 22.)  On December 15, 2010, the U.S. Attorney's Office for the Southern District of New York and the DOI jointly unsealed a 35-page criminal complaint (the "Criminal Complaint") and announced charges against six individuals connected to CityTime, including Mark Mazer and Scott Berger. (See Hyland Aff. Exs. 7, 8.)  On March 8, 2012, SAIC signed a

4

deferred prosecution agreement (the "DPA") with the U.S.

Department of Justice, under which SAIC admitted to having

defrauded the City and agreed to a civil forfeiture of $500

million, with the majority of the funds intended to repay the

City (the "SAIC Settlement"). (See Krishnan Decl. Exs. A, O, P.)

Plaintiff brought this action on behalf of the City and the

State of New York (the "State"), alleging that Spherion is

liable under the New York False Claims Act ("NYS FCA") and the

New York City False Claims Act ("NYC FCA") for the submission of

false claims to the City.  Plaintiff advances four theories on

which he claims Spherion is liable under the NYS FCA and NYC

FCA.  First, Plaintiff contends that Spherion is vicariously

liable under its contract with the OPA for Mazer's and Berger's

acts in "steering billable work to their own entities then

inflating and falsifying timesheets" (the "vicarious liability

claims").  Second, Plaintiff alleges that Spherion submitted

false claims to the City because it "failed to provide quality

assurance services" as required by its contract with the OPA

(the "quality assurance claims").  Third, Plaintiff asserts that

Spherion is liable because it violated the conflict of interest

provision of its contract with the OPA by employing Mazer and

Berger (the "conflict of interest claims").  Fourth, Plaintiff

alleges that Spherion is liable for engaging in certain false

billing practices (the "false billing claims").  Plaintiff also alleges claims for retaliation under the NYS FCA and NYC FCA.

## A.   Procedural History

On March 31, 2011, Plaintiff brought this action in New York State Supreme Court.  On April 22, 2013, the State filed a Notice of Election in New York Supreme Court, declining to file a complaint against any of the defendants named in Plaintiff's action or to intervene in the action. (See "Notice of Election by the State of New York," Notice of Removal Ex. A, ECF No. 1-1 at 103-104 (filed Aug. 20, 2015).)  On March 4, 2015, the City filed under seal a Notice of Election in New York Supreme Court declining to intervene in Plaintiff's action or convert it to a civil enforcement action. (See "Notice of Election to Decline Intervention by the City of New York," Notice of Removal Ex. A, ECF No. 1-1 at 106-108 (filed Aug. 20, 2015).)  On July 13, 2015, Plaintiff filed a second amended complaint ("SAC").  On August 20, 2015, Spherion removed the case to this Court. (See Notice of Removal, ECF No. 1 (filed Aug. 20, 2015).)  On October 9, 2015, Spherion moved to dismiss the SAC pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) for failure to state a claim and failure to plead fraud with particularity.  On November 10, 2016, the Court granted in part Spherion's motion to dismiss as to Plaintiff's qui tam claims. (See Op. & Order, ECF No. 70 (filed Nov. 10, 2016).)  First, the Court dismissed

Plaintiff's vicarious liability claims as barred by the public

disclosure bars of the NYS FCA and NYC FCA because Plaintiff

does not qualify as an original source. (Id. at 34.)  Second,

the Court dismissed Plaintiff's quality assurance claims and

conflict of interest claims for failure to state claims under

the NYS FCA and NYC FCA. (Id. at 38-39.)  Third, the Court

dismissed Plaintiff's false billing claims for failing to comply

with the heightened pleading standard of Rule 9(b). (Id. at 42.)

The Court denied Spherion's motion to dismiss Plaintiff's

retaliation claims. (Id. at 49.)  The Court dismissed

Plaintiff's qui tam claims without prejudice, but noted that it

would only allow amendment if Plaintiff could demonstrate that

he is "capable of curing the deficiencies in his qui tam claims

and that justice requires granting leave to amend." (Id.)  On

January 8, 2016, Plaintiff moved for a relator's share of the

SAIC Settlement. (See Mot. for Relator's Share, ECF No. 47

(filed Apr. 15, 2016).)  On March 28, 2017, the Court denied

Plaintiff's motion, finding that absent a valid qui tam action,

Plaintiff is not entitled to a relator's share. (See Op. &

Order, ECF No. 84 (filed Mar. 28, 2017).)

     On December 12, 2016, Plaintiff moved for leave to file a

Third Amended Complaint ("TAC"). (Mot. for Leave to File TAC,

ECF No. 72 (filed Dec. 12, 2016).)  Plaintiff contended that the

TAC contained "newly alleged information" from documentary

discovery produced by the City that was unavailable when he
filed the SAC.  On April 21, 2017, the Court denied Plaintiff
leave to amend and dismissed Plaintiff's qui tam claims with
prejudice, finding that the proposed TAC did not remedy the
deficiencies identified in the Court's November 10, 2016 Order.
(See Op. & Order, ECF No. 86 (filed Apr. 21, 2017).)  On August
18, 2017, Plaintiff moved pursuant to Rule 54(b) for entry of
the Orders as final judgments and to stay proceedings on his
retaliation claims during the pendency of the appeal of the
Orders.

## II.  Discussion

### A.  Legal Standard

Rule 54(b) provides that "[w]hen an action presents more
than one claim for relief . . . or when multiple parties are
involved," a district court "may direct entry of a final
judgment as to one or more, but fewer than all, claims or
parties only if the court expressly determines that there is no
just reason for delay." Fed. R. Civ. P. 54(b).  "The
determination of whether to grant Rule 54(b) certification is
committed to the discretion of the district court and will be
set aside only for an abuse of discretion." Hogan v.
Consolidated Rail Corp., 961 F.2d 1021, 1025 (2d Cir. 1992).
The district court's discretion, however, is to be exercised
sparingly in light of the "'historic federal policy against

piecemeal appeals.'" <u>Curtiss-Wright Corp. v. General Electric</u>

<u>Co.</u>, 446 U.S. 1, 8 (1980) (quoting <u>Sears, Roebuck & Co. v.</u>

<u>Mackey</u>, 351 U.S. 427, 438 (1956)).  Certification under Rule

54(b) should be granted only "where there are "interest[s] of

sound judicial administration and efficiency to be served, or .

. . where there exists some danger of hardship or injustice

through delay which would be alleviated by immediate appeal."

<u>Hogan</u>, 961 F.2d at 1025 (internal quotation marks and citations

omitted).

### B.   Analysis

Neither Spherion nor the City[1] dispute that the first two

requirements of the 54(b) standard are met:  multiple claims are

present and at least one claim has been finally decided within

the meaning of 28 U.S.C. § 1291.  Thus, the only issue that

remains is whether there is "no just reason for delay."

To determine whether there are no just reasons for delay, a

district court "must take into account judicial administrative

interests as well as the equities involved." <u>Curtiss-Wright</u>, 446

U.S. at 8.  "The exercise of this discretion is guided by

considerations such as the institutional efficiency of the

district and appellate courts, as well as any 'undue hardship'

---

[1] The City submitted a Memorandum of Law in Opposition to Plaintiff's
motion for certification under Rule 54(b). (<u>See</u> City's Mem. of L. in
Opp'n to Pl.'s Mot. for Entry of Final Judgment Under Rule 54(b), ECF
No. 94 (filed Sept. 20, 2017).)

that the parties may have to suffer absent an immediate appeal."

L-7 Designs, Inc. v. Old Navy, LLC, 964 F. Supp. 2d 299, 317

(S.D.N.Y. 2013).  Courts in this Circuit have held that

certification under Rule 54(b) is appropriate either to serve

judicial administration and efficiency or where there is some

danger of unusual hardship or injustice through delay. See In re

Gentiva Sec. Litig., 2 F. Supp. 3d 384, 387 (E.D.N.Y. 2014) ("In

other words, to prevail on a Rule 54(b) certification motion,

the moving party must satisfy one of these two prongs."); In re

Vivendi Universal, S.A., Sec. Litig., 02 CIV. 5571(RJH), 2012 WL

362028, at *4 (S.D.N.Y. Feb. 6, 2012) ("[E]ven though the Court

has determined that judicial efficiency will not be served by

certifying a partial appeal here, the plaintiffs could still

prevail on the motion if they are able to demonstrate prejudice

. . . of such a character as to 'offset' the Court's efficiency

conclusion.").  Plaintiff has not shown that certification is

appropriate under Rule 54(b) to serve judicial administration

and efficiency or that there is some danger of undue hardship or

injustice through delay.

     Plaintiff argues that equitable considerations demonstrate

no just reason for delay for several reasons including (1)

Plaintiff would suffer hardship through delay because both

Plaintiff and the Government stand to gain a large recovery for

Plaintiff's qui tam claims, (2) this action has been pending for

over six years, (3) there is significant public interest in an

immediate appeal, (4) Plaintiff suffered the economic hardship

of joblessness, and (5) any further delay would impose undue

hardship resulting from "an expensive and duplicative trial" if

the Second Circuit were to reverse either Order after the

retaliation claims are resolved. (Pl.'s Mem. of L. in Supp. of

Mot. for Entry of Final Judgment Pursuant to Rule 54(b) at 6-8,

ECF No. 92 (filed Sept. 20, 2017) [hereinafter Pl.'s Mem.].)

First, regarding the argument that further delay would work

an undue hardship because both Plaintiff and the Government

stand to gain a large recovery for Plaintiff's qui tam claims, a

district court may find that there is no just reason for delay

"where a plaintiff might be prejudiced by a delay in recovering

a monetary award." Advanced Magnetics, Inc. v. Bayfront

Partners, Inc., 106 F.3d 11, 16 (2d Cir. 1997).  However, the

Court has dismissed Plaintiff's qui tam claims with prejudice

and denied Plaintiff's motion for a relator's share.  Plaintiff

has not been awarded any judgment or monetary recovery for his

qui tam claims, thus, he is not prejudiced by any delay in

payment.  In both cases Plaintiff cites in support of this

argument, Curtiss-Wright and Ginett, the district courts entered

monetary judgments in favor of plaintiffs, and the appellate

courts affirmed the district courts' decisions to enter final

judgments under Rule 54(b) because further delay in receiving

11

the adjudged payment would work undue hardship on the

plaintiffs. See Curtiss-Wright, 446 U.S. at 6 (affirming

district court decision that plaintiff would suffer severe daily

financial loss from nonpayment of $19 million judgment because

current interest rates were higher than statutory prejudgment

rate); Ginett v. Computer Task Group, Inc., 962 F.2d 1085, 1097

(2d Cir. 1992) (affirming district court's decision to enter

final judgment after granting plaintiff's claim for severance

pay).

     Second, as to Plaintiff's argument that public interest

weighs in favor of certifying the Orders as final judgments,

Plaintiff has failed to show how public interest would support

an immediate appeal in this action, rather than the ordinary

progression of Plaintiff's claims.  Indeed, both the City and

New York State declined to intervene in this action and the

Court has dismissed Plaintiff's qui tam claims.  Third, the

"economic hardship of joblessness" that Plaintiff allegedly

suffered due to his retaliatory discharge would not be

alleviated by granting Rule 54(b) certification because

Plaintiff's interlocutory appeal would only address his qui tam

claims.  Fourth, the fact that this litigation has been pending

for six years would only be exacerbated by an immediate appeal,

as discussed below.  Fifth, and finally, Plaintiff's argument

that any further delay would impose undue hardship resulting

from "an expensive and duplicative trial" if the Second Circuit were to reverse either Order after the retaliation claims are resolved is without merit.  The mere potential for duplicative trials should not, by itself, result in 54(b) certification, except "in the infrequent harsh case." In re Bayou Hedge Fund Litig., No. 06 CV 3026 (CM), 2007 WL 2363622, at *6 (S.D.N.Y. Aug. 16, 2007).  For example, some courts have granted certification under Rule 54(b) to avoid "duplicative trials" in cases with multiple defendants, some of whom have been dismissed from the action. See, e.g., Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005) (finding "danger of hardship or injustice" in further delay where district court dismissed antitrust claim against thirty non-New York defendants and "it would make no sense to try the antitrust count against New York State alone if the dismissals of the other states or the other claims turned out to be in error").  However, other courts have denied motions under Rule 54(b), even in cases with multiple defendants. See, e.g., In re Bayou Hedge Fund Litig., 2007 WL 2363622, at *6 (denying Rule 54(b) motion where some defendants had been dismissed because "the so-called hardship of duplicative trials will arise in every multiple party suit in which one of the defendants is dismissed but must await the finality of its release until the liability of the remaining defendants has been determined and judgment has been entered").

Other courts have held that "certification may be appropriate where an expensive and duplicative trial could be avoided if, without delaying prosecution of the surviving claims, a dismissed claim were reversed in time to be tried with other claims." Building Indus. Fund. v. Local Union No. 3 Int'l Brotherhood of Elec. Workers, 992 F. Supp. 162, 191 (E.D.N.Y. 1996) (internal quotation marks and citation omitted).  However, even if the Second Circuit reversed the Court's dismissal of the qui tam claims, there is no indication that a trial on Plaintiff's qui tam claims would be duplicative of a trial on his retaliation claims. See, e.g., TADCO Const. Grp. Corp. v. Dormitory Auth. of New York, No. 08-CV-73 KAM JMA, 2012 WL 3011735, at *6 (E.D.N.Y. July 23, 2012) (denying motion for certification under Rule 54(b) because "any second trial would be minimally duplicative because most of the remaining" claims had no relation to underlying facts of dismissed claims). Indeed, Plaintiff argues that his qui tam and retaliation claims are distinct:  "the two sets of claims 'involve at least some different questions of fact and law and could be separately enforced.'" (Pl.'s Mem. at 9 (quoting Advanced Magnetics, 106 F.3d at 22).)

Plaintiff also argues that judicial administrative interests demonstrate no just reason for delay because (1) Plaintiff's qui tam and retaliation claims are distinct and

14

separable; (2) if the qui tam claims are to be reinstated, it is

more efficient for that reinstatement to occur in time for trial

on both claims; and (3) a reversal of either Order by the Second

Circuit would facilitate a settlement, offsetting any

possibility that an appellate court would face the same issues

on a subsequent appeal. (Pl.'s Mem. at 9-11.)  First, the mere

fact that allowing the Second Circuit to rule on the dismissed

claims may increase the possibility of settlement could be made

in many cases in which there has been a partial dismissal and

"does not provide a basis to enter a partial judgment."

Carpenter v. City of New York, 984 F. Supp. 2d 255, 272

(S.D.N.Y. 2013).  Second, granting Plaintiff's motion for Rule

54(b) certification and staying Plaintiff's retaliation claims

while the appeal is pending would not "expedit[e] a final

resolution to this case." Correspondent Servs. Corp. v. J.V.W.

Inv. Ltd., 232 F.R.D. 173, 176 (S.D.N.Y. 2005).  Rather, it

would further delay the resolution of Plaintiff's retaliation

claims, which, as Plaintiff repeatedly points out, have been

pending for over six years.  Finally, "[n]ot all final judgments

on individual claims should be immediately appealable, even if

they are in some sense separable from the remaining unresolved

claims." Novick v. AXA Network, LLC, 642 F.3d 304, 310 (2d Cir.

2011) (quoting Curtiss-Wright, 446 U.S. at 8).  "It does not

normally advance the interests of sound judicial administration

15

or efficiency to have piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case in successive appeals from successive decisions on interrelated issues." Id. at 311 (internal quotation marks and citation omitted). The interests of judicial economy weigh against allowing for a piecemeal interlocutory appeal on Plaintiff's qui tam claims, which the Court has twice held insufficient, and further delaying resolution of Plaintiff's retaliation claims, which are based on events that took place over a decade ago. Accordingly, Plaintiff has failed to show how the interest of judicial efficiency requires that the Court "short-circuit the normal progression of this case." Sea Trade Co. v. FleetBoston Fin. Corp., No. 03 CIV. 10254 (JFK), 2009 WL 4667102, at *2 (S.D.N.Y. Dec. 9, 2009).

<strong>CONCLUSION</strong>

For the reasons stated above, Plaintiff's motion for certification of the Court's Orders as final judgments under Rule 54(b) is DENIED. The Clerk of Court is respectfully directed to terminate the motion docketed at ECF No. 91.

**SO ORDERED.**

Dated:  New York, New York
        June 2 0 , 2018

John F. Keenan

John F. Keenan
United States District Judge

16