# KIRBY McINERNEY

825 Third Avenue
New York, NY 10022
212.371.6600
Fax. 212.751.2540
WWW.KMLLP.COM
Of counsel
  Roger W. Kirby
  Alice McInerney

April 10, 2019

**VIA ECF**

Honorable John F. Keenan
United States District Judge
500 Pearl Street
New York, NY 10007-1312

Re: *The State of New York ex rel. Vinod Khurana, et al. v. Spherion Corp. (n/k/a SFN Group, Inc.)*, No. 15 Civ. 06605 (JFK)

Dear Judge Keenan:

We represent Plaintiff-Relator Vinod Khurana ("Relator") in the above-referenced matter. Now that discovery has concluded, Relator respectfully requests a pre-motion conference, pursuant to Rule 2(A) of Your Honor's Individual Practices, to allow Relator to move for summary judgment pursuant to Fed. R. Civ. Pro. 56. Relator further requests that this conference be held in conjunction with the pretrial conference already scheduled for April 18, 2019.

Relator's pending claims are for retaliation pursuant to the New York State False Claims Act, N.Y. State FIN. LAW § 191(1), and the New York City False Claims Act, ADMIN. CODE § 7-805(a)(3), (collectively, the "FCA"). Relator claims that Defendant Spherion Corp. ("Spherion") demoted and then terminated him for reporting fraud-related conduct to Spherion and several administrative agencies of the City of New York "in furtherance of an [FCA] action . . . or . . . to stop one or more [FCA] violations." Section 191(1).[1]

This Court previously found that Relator's communications to Spherion employees in 2006 were sufficient allegations of protected conduct. ECF No. 70, Op. & Order at 47-48. Relator now seeks to move for summary judgment based on the record adduced in discovery. Fed. R. Civ. P. 56. A synopsis of certain salient facts not in dispute follows.[2]

**First**, Relator was working for Mark Mazer (Spherion's project manager) and others who were convicted of engaging in a massive, corrupt, kickback scheme during this time. *See* Superseding Indictment at ¶¶ 8, 41, *United States v. Mazer*, No. 11-cr-121-GBD (S.D.N.Y. Apr. 29, 2014), ECF No. 77; Judgment in a Criminal Case, *Mazer*, No. 11-cr-121-GBD, ECF No. 366.

---

[1] "The FCA incorporates broad anti-retaliation protection for whistleblowers." *United States v. Empire Educ. Corp.*, 959 F. Supp. 2d 248, 256 (N.D.N.Y. 2013). To prove FCA retaliation claims, "[R]elator must show [1] that he engaged in protected conduct . . . , [2] that his employer was aware of that conduct, and [3] that he was terminated in retaliation for that conduct." *Anonymous v. Anonymous*, 165 A.D.3d 19, 30, 83 N.Y.S.3d 472, 480 (N.Y. App. Div. 2018) (citing cases). Whether the employer was "already *aware*" of the reported conduct is irrelevant. Spherion's April 1, 2019 Pre-Motion Letter, ECF No. 130, at 1 (emphasis in original).

[2] Relator has not included exhibits to this letter, but the record references can be made available if the Court prefers.

**Second**, Mark Mazer and Scott Berger (a Spherion consultant) told Relator in 2004 that the software application was going to fail and that he should not communicate that fact to anyone working for the City, particularly the City's Financial Information Services Agency ("FISA"). *See* Khurana Tr. 101:19-102:15.

**Third**, in 2004, Relator told City personnel at FISA and Howard Cohen (a Spherion account executive) about Mark Mazer's comments and continually updated them in late 2004 and 2005 about the fact that the testing showed that the software should not be in development. *See id.* at 126:4-129:4. He also told FISA and Howard Cohen that Scott Berger lied to FISA about a supposed agreement on how the project was to proceed. *Id.* at 404:3-406:14. Relator also spoke with Howard Cohen about the conflict created by SAIC's involvement in the load testing process.

**Fourth**, because of these communications, Spherion restricted Relator's access to information about the software. *See id.* at 126:4-25, 128:6-129:4, 190:20-191:4. He was also threatened with termination. *See id.* at 141:5-15.

**Fifth**, in late 2006 when Relator told Scott Berger that two employees of the corrupt kickback companies, DA Solutions and PrimeView, were incompetent and conducting personal business while on the project, Spherion threatened to terminate Relator and then demoted him. *See id.* at 158:4-159:14. Moreover, Mark Mazer instructed Howard Cohen to speak with Relator about being a "team player." RS000509. Relator apparently was not "sensitive to the politics (SAIC, FISA, OPA)," RS000499, and was "not go[ing] through [the appropriate] channels," Cohen Tr. 126:22-128:23. Relator told Howard Cohen about the problems at the kickback companies and that DA Solutions was owned by Mark Mazer's wife. *See* Khurana Tr. 367:4-374:4.

**Sixth**, Howard Cohen was conflicted because he was paid commissions based on the number of consultants on the project, including Mark Mazer and Scott Berger, earning more than $600,000 from City contracts. *See* Roach Tr. 14:15-15:16; Khurana Tr. 415:22-416:8, 417:3-11. He had no incentive to listen to Relator and every incentive to not "ruffl[e] feathers." RS000499.

**Seventh**, Relator was considered a talented performance tester and was never fired before or since he worked for Spherion.[3] Scott Berger and Mark Mazer decided to fire Relator in late May 2007. *See* RS000642; *see also* RS000500. E-mails show that the termination process began immediately after Relator sent an e-mail, viewed favorably by New York City personnel, showing a serious flaw in the software. *See* NYC_CT00002549-2550. SAIC consultants responded by lying about the reasons for the flaw. *See* Arya Tr. 132:12-18. Two days later, Mahesh Sharma (a DA Solutions consultant and Relator's supervisor) suddenly e-mailed Mark Mazer that Relator was arriving late. Yet, Mahesh Sharma remembers Relator as a good person and does not

---

[3] *See* Cohen Tr. 69:15 ("technical skills"); RS000262 ("talented staff" who should be "retained"); RS000294 (increasing Relator's pay rate); RS000173 (wanting to give Relator a raise even though he "received [a] recent increase[]"); Cohen Ex. 11 ("an excellent testing SME who has been referred [] by [Relator]"); Arya Tr. 70:13-14, 144:2-6 ("He's a good performance engineer" and "very knowledgeable"); Basu Tr. 89:23-90:23, 46:15-48:17, 69:25-70:2 (testifying that Relator had advised her, was good at his job, socialized with her and other colleagues, and remembers him as "a good guy"); Sharma Tr. 38:19, 43:16-17, 39:8-9 ("a good worker" with "programming skills" and not "remember[ing] any negative incidents").

Kirby McInerney LLP
Page 3

remember why he was fired. *See* Sharma Tr. 38:19, 43:16-17; 73:4-13. Moreover, Relator's immediate supervisor, Rekha Basu, said that lateness would not be a problem if Relator worked late the day before. *See* Basu Tr. 69:7-11, 75:3-16. Relator's hours were consistent, he was never reprimanded for lateness before being transferred to Mahesh's team, and Relator's e-mails show that he was working at around 10:00 p.m. when he sent the e-mail about the software flaw. *See* NYC_CT00002549. All of this shows that lateness was premeditated pretext.

**Eighth**, other consultants who talked or knew too much were summarily demoted and fired. *See* Arya Tr. 57:10-14, 83:18-23; Sharma Tr. 27:14-16; Khurana Tr. 274:3-11, 377:2-25.

**Finally**, these and other supportive facts are established by negative inferences to be drawn from Mark Mazer's invocation of his Fifth Amendment right against self-incrimination. *See LiButti v. United States*, 107 F.3d 110, 121 (2d Cir. 1997); *see* Cohen Tr. 64:12-17, 65:25-66:25; Roach Tr. 24:13-25:17; *see generally* Mazer Tr. For example, an adverse inference should be drawn from Mazer's refusal to answer the questions, "[I]s it true that you took authority away from qualified people if they questioned the progress of the CityTime project or its application?," and "[Y]ou wanted to fire Mr. Khurana for going to FISA?" Mazer Tr. 10:11-13, 16:11-12.

The reason for Relator's demotion and termination is clear: retaliation for his protected activity.[4] "It is well settled that '[p]rotected activity is [to be] interpreted broadly.'" *Anonymous*, 165 A.D.3d at 30-31, 83 N.Y.S.3d at 480. In its pre-motion letter, Spherion admits that Relator was "criticized within Spherion . . . due to . . . his failure to follow his supervisors' instructions not to communicate directly with New York City agencies that were not in his chain of reporting command, and his doing so without supervisor approval." ECF No. 130, at 2. Spherion's spin ignores the most salient point – that Relator was working in a thoroughly corrupt project and was being asked to report to the very criminals running the scheme.

For these reasons, Relator respectfully requests a pre-motion conference on April 18, 2019 to address his motion under Rule 56. Thank you for your continued consideration of these matters.

Respectfully submitted,

*/s/ David E. Kovel*
David E. Kovel
**KIRBY McINERNEY LLP**
825 Third Avenue, 16th floor
New York, New York 10022
Telephone: (212) 371-6600
E-mail: dkovel@kmllp.com

---

[4] Relator was not fired for occasionally arriving late to work after working late the night before (his manager, Rekha Basu, testified that such situations would not be a problem), for submitting late time sheets (dozens of consultants did so), or for lacking technical or teamwork skills or initiative (his colleagues and managers commended him for these traits). *See* Cohen Tr. 69:15; RS000262; RS000294; RS000173; Cohen Ex. 11; Arya Tr. 70:13-14, 144:2-6; Basu Tr. 89:23-90:23, 46:15-48:17, 69:25-70:2, 75:3-16; Sharma Tr. 38:19, 43:16-17; RS000257; RS000642.