**SEYFARTH SHAW**

Seyfarth Shaw LLP
Seaport East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
(617) 946-4800
fax (617) 946-4801
www.seyfarth.com

Writer's direct phone
(617) 946-4989

Writer's e-mail
crobertson@seyfarth.com

June 10, 2019

**VIA ECF**
The Honorable Jesse M. Furman
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10022

      Re:    **State of New York** *ex rel.* **Vinod Khurana v. Spherion Corp. (n/k/a SFN Group, Inc.)** / <u>Docket No. 1:15-cv-06605-JFK-OTW</u>

Dear Judge Furman:

      This Firm represents Defendant SFN Group, LLC, f/k/a Spherion Corp. ("Spherion") in the above-referenced action. We submit this joint letter with the consent of counsel for Plaintiff-Relator Vinod Khurana ("Relator"), in accordance with Court's Order on June 3, 2019. (ECF 141).

1.    **Counsel Information**

<u>For Relator Vinod Khurana</u>
David E. Kovel
Andrew Martin McNeela
Seth Matthew Shapiro
Kirby McInerney LLP
250 Park Avenue, Suite 820
New York, NY 10177
(212) 371-6600

<u>For Defendant Spherion</u>
Christopher F. Robertson
Howard M. Wexler
Lisa L. Savadjian
Seyfarth Shaw LLP
620 Eighth Avenue, 32nd Floor
New York, NY 10018-1405
(212) 218-3332



2. **Statement of Case and Defenses**

Relator

Relator has asserted *qui tam* claims on behalf of the State of New York and the City of New York, and retaliation claims on his own behalf, against Defendant pursuant to the New York State False Claims Act, N.Y. Fin. Law §§ 187, *et seq.*, and the New York City False Claims Act, Admin. Code §§ 7-801, *et seq.* (collectively, the "FCA").

This case is an outgrowth of the CityTime scandal, a kickback scheme involving the New York City's efforts to develop a common timekeeping software for all City agencies, which defrauded taxpayers by more than $600 million. The primary culprit was Mark Mazer ("Mazer"), whom Defendant hired to oversee the CityTime project, and who was ultimately convicted of various money-laundering and bribery offenses and sentenced to concurrent terms of imprisonment totaling twenty years.

Relator is a former employee of Defendant who performed quality assurance ("QA") work on the "CityTime Project" from July 2004 through June 2007. During his tenure, Relator repeatedly voiced specific concerns that the CityTime software was not viable and that the project had become a money pit that puttered along for no apparent purpose other than to enrich Mazer and his cohorts. Relator did so out of an obligation to report "waste" and "abuse" and because he believed that Mazer, among others, was "up to no good." Mazer caught wind of Relator's efforts to honestly serve his client – the City of New York and its taxpayers – and with Spherion's full authority marginalized, demoted and ultimately terminated Relator.

Even after his termination, Relator continued to sound alarm bells. Those efforts included publishing an anonymous CNN iReport about the fraud, as well as providing information to *Daily News* for an exposé on DA Solutions, which influenced another Spherion employee to speak with the City's Department of Investigations ("DOI"). Relator also contacted the DOI, providing documents and hours of testimony to stop the fraud.

In an Opinion and Order dated November 10, 2016, Judge Keenan dismissed Relator's FCA *qui tam* claims but held that Relator had pled actionable FCA retaliation claims. *See* ECF No. 70. Judge Keenan subsequently denied Relator's motions to amend his FCA *qui tam* claims. *See* ECF Nos. 86 & 128.

Spherion

After years of litigation, the two remaining causes of action in this case are Plaintiff's retaliation claims under the New York State False Claims Act ("NY FCA") and the New York City False Claims Act ("NYC FCA"). Plaintiff contends that he was discharged from the CityTime project with the City of New York's Office of Payroll Administration ("OPA") in retaliation for raising issues concerning the project's performance capabilities. With discovery complete, the actual facts reveal that the crux of Plaintiff's entire case is demonstrably false.



Plaintiff's whistleblower retaliation case has fallen apart, as he cannot produce even a scintilla of evidence to support his allegations of retaliation. Instead, Plaintiff's deposition testimony undermines his own claims, revealing: (1) his reporting of poor preliminary performance test results of the CityTime application does not constitute protected activity; (2) he was merely fulfilling his role as performance load tester (i.e. doing his job), rather than disclosing a purported fraud or false claims against the government; (3) he never reported any "fraud" to anyone from 2004 to 2007; (4) he cannot rebut the legitimate, non-retaliatory reasons provided for his termination; and (5) there is no causal connection between Plaintiff's alleged protected activity and the termination of his employment.

First, the facts establish that the subject matter of Plaintiff's "complaints" about the poor performance of CityTime simply do not rise to the level of "protected activity." Instead, the conduct described by Plaintiff amounts to nothing more than internal reports regarding the poor progress of the application's development. To the extent Plaintiff did raise issues regarding CityTime's performance, there is no evidence that the nature of Plaintiff's complaints signaled any purported fraud upon the City perpetrated by Spherion, but rather identified routine performance issues surrounding the project since its inception, and of which all management was aware. Plaintiff's reporting of such routine issues was one of his required job duties as a "Load Performance Tester," as he was tasked with evaluating the performance of the application and the load of users it could withstand. Because Plaintiff was merely doing his job in reporting these performance results, and he has no evidence whatsoever that he reported a "false claim" or fraud when discussing the performance results, he is removed from the ambit of False Claims Act retaliation protection.

Plaintiff is likewise unable to prove that his assignment at the OPA was actually terminated in retaliation for that conduct as there is no causal connection between his reports and his termination. Despite the allegations in the Complaint, Plaintiff never reported any fraud to Spherion's Account Manager Howard Cohen or any City employee. And by June 2007, when Plaintiff's employment was eventually terminated, Plaintiff was reporting to a different supervisor, Mahesh Sharma, who had no knowledge of his alleged reporting of fraud years earlier, as Plaintiff conceded he never reported any fraud or false claims to Sharma.

Spherion also has a host of legitimate, non-retaliatory reasons for the termination of Plaintiff's assignment at the OPA on June 22, 2007, including well-documented performance problems, failure to comply with Spherion timekeeping procedures, poor attitude towards coworkers, and an inability or unwillingness to meet internal deadlines. After approximately five months in a new role, under a new supervisor, at which point it became clear Plaintiff was not going to change, there was no other option but to terminate his employment. This decision had nothing to do with Plaintiff raising any purported fraud or false claims with regard to the CityTime Project, demonstrated most easily by Plaintiff's admission at his deposition that he never actually reported any fraud or false claim.

The lack of evidence to support Plaintiff's Complaint against Spherion is not surprising considering that Spherion's operations were thoroughly investigated by the City of New York. No agency ever took any action against Spherion, and Plaintiff's attempt to cast himself as a whistleblower was rejected. These undisputed facts lead to only one inescapable conclusion: Plaintiff has no case.



3. **Jurisdictional Statement**

This Court has original jurisdiction over the action under 28 U.S.C. § 1332(a) due to diversity of citizenship and the amount in controversy. Spherion removed the matter from the Supreme Court of New York, New York County on August 20, 2015. (ECF 1). Relator was a resident of New Jersey at the time this action was commenced. SFN Group is a Delaware corporation with its principal place of business in Massachusetts. (ECF 1, ¶ 10(a)). At the time this action was commenced, SFN Group's principal place of business was in Florida. (ECF 1, ¶ 10(b)). Relator's requested monetary relief exceeds $75,000 in value. (ECF 1, ¶ 11).

Spherion, now known as SFN Group, Inc. is an indirect, wholly-owned subsidiary of Randstad Holding nv, a company organized under the laws of The Netherlands and publicly traded on the Amsterdam Exchange.

4. **Existing Deadlines**

Oppositions to the parties' respective summary judgment motions are to be filed on or before July 12, 2019, and replies in further support of respective summary judgment motions are to be filed on or before July 26, 2019. (ECF 140).

5. **Previously Scheduled Conferences**

There are no pending conference dates. Judge Keenan previously granted and scheduled oral argument on the parties' motions for summary judgment for June 26, 2019 but has since cancelled the date in advance of the case's reassignment. (ECF 138).

6. **Outstanding Motions**

The parties exchanged motions for summary judgment on May 17, 2019. (Minute Entry, Apr. 18, 2019).

Relator

Relator seeks partial summary judgment on the following elements of his FCA retaliation claims: (i) protected conduct; (ii) Defendant's knowledge of Relator's protected conduct (or at a minimum, the actions that allegedly constitute protected conduct); and (iii) conduct rising to the level of adverse action, assuming retaliatory motive.

Spherion

Spherion seeks summary judgment as to all elements of Plaintiff's New York State and New York City False Claims Act retaliation claims.



7. **Pending Appeals**

There are no pending appeals.  Relator filed a motion for certification of the Court's judgment under Rule 54(b) on September 20, 2017 as to the Court's dismissal of the *qui tam* claims with prejudice, and the motion was denied on June 20, 2018. (ECF 96).

8. **Prior Settlement Discussions**

The parties' respective counsel engaged in settlement discussions throughout the pendency of this matter, and most recently on December 19, 2018, but are unable to reach a resolution.

9. **ADR**

In light of the advanced procedural posture of this case and pending motions for summary judgment, the parties do not believe that mediation is appropriate or would be fruitful at this time.

10. **Estimated Length of Trial**

Two weeks.

        Very truly yours,

        SEYFARTH SHAW LLP

        */s/ Christopher F. Robertson*

        Christopher F. Robertson

cc:    David E. Kovel, Esq.
        Andrew M. McNeela, Esq.
        Seth M. Shapiro, Esq.