UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE STATE OF NEW YORK *EX REL* VINOD KHURANA and THE CITY OF NEW YORK *EX REL* VINOD KHURANA,<br><br>    Plaintiffs,<br><br>  v.<br><br>SPHERION CORP. (N/K/A SFN GROUP, INC.),<br><br>    Defendant. | Case No. 15-cv-06605-JFK |

**RELATOR'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE PROPOSED THIRD AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.   Legal Standard ................................................................................................................. 1

II   The Proposed Amendment is Not Futile .......................................................................... 2

    A.   The TAC Viably Alleges that Relator is an Original Source ................................. 2

        1.   The TAC Alleges Relator's 2004-2005 Disclosures Make Him
an Original Source Because He Told of the Intentional Delay
and Incompetence at CityTime .................................................................. 2

        2    The TAC Alleges Relator was an Original Source Due to His 2009
iReport Because He Again Told of the Intentional Delay,
Misrepresentations, Incompetence, and Profiteering at CityTime ............. 3

        3.   The TAC Alleges Relator was an Original Source Due to His *Daily
News* Commentary Which Specifically Disclosed the Kickback
Relationship To City Officials Prior to any other Disclosure ..................... 4

        4.   The TAC Alleges Relator Disclosed Knowledge That Materially
Adds to the Vicarious Liability Claims ...................................................... 5

    B.   The TAC Alleges a Claim for False Certification of Quality Assurance
Services .................................................................................................................. 6

    C.   The TAC Alleges a Claim for False Certification of Conflict of Interest
Compliance ............................................................................................................ 8

III.   Relator's Motion for Leave to Amend is Timely, in Good Faith and Would Not
Prejudice Defendants ........................................................................................................ 8

Plaintiff-Relator Vinod Khurana ("Relator") respectfully moves under Fed. R. Civ. P. 15(a) for leave to file his proposed Third Amended Complaint ("TAC"), which is attached as a redacted Exhibit A to this memorandum.[1]

Allowing amendment would be proper here because: (1) much of the newly alleged information comes from documentary discovery produced by the City of New York which was unavailable when Relator filed the second amended complaint (*see, e.g.,* internal Spherion and City emails cited at TAC ¶¶40-41, 72, 82-85, 87-89); (2) the amendment will not prejudice Defendant Spherion Corp.; and (3) the amendment is not futile as the new allegations, which are based in part on new documents, demonstrate among other things (a) that Relator was the first to publicly disclose the kickback relationship to government officials in April 2010, before the City had learned of the relationship from any other source and (b) that Relator's earlier disclosures to the City government also aligned directly with the fraud.

## I.     Legal Standard

A motion to amend is governed by Fed. R. Civ. P. Rule 15(a), which states that leave to amend "shall be freely given when justice so requires." *Williams v. Citigroup Inc.*, 659 F.3d 208, 13 (2d Cir. 2011). The standard is a permissive one that favors a "strong preference for resolving disputes on the merits." *Id.* at 212-13 (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)); *see also Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999) (referring to the "relaxed standard" for motions to amend). The rule is "interpreted liberally, [and] an amendment is normally permitted." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 866 F. Supp. 2d 257, 272 (S.D.N.Y. 2012) (quotation marks omitted). "[A] Rule 15(a) motion should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most

---

[1] Because the TAC incorporates references to documents that the City produced in discovery and has labeled confidential, both it and this memorandum have been partially redacted with the unredacted versions filed under seal.

...

...
...

important, the resulting prejudice to the opposing party." *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603 (2d Cir. 2005) (quotation marks omitted); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962).

## II. The Proposed Amendment is Not Futile

The Court, in its November 10, 2016 order (ECF No. 70, the "Order") dismissing the Second Amended Complaint ("SAC"), stated that the Relator must demonstrate that the TAC is capable of curing the deficiencies in the SAC. As discussed below, the TAC successfully addresses these deficiencies and will survive a motion to dismiss. The proposed amendment is therefore not futile.

### A. The TAC Viably Alleges that Relator is an Original Source

#### 1. The TAC Alleges Relator's 2004-2005 Disclosures Make Him an Original Source Because He Told of the Intentional Delay and Incompetence at CityTime

The Court's Order ruled that Relator could not have been an original source of the vicarious liability claims, in part because his late 2004 disclosures to FISA, OPA, SAIC and Spherion did not relate to Mark Mazer's kickback fraud, which the Court identified as beginning no earlier than 2005 or 2006. Order at 33.

The TAC's allegations cure this deficiency by making clear that Mazer's kickback fraud is part of the larger fraud initiated by Gerald Denault in 2003 and that Mazer's cooperation with Denault began when he was hired in 2004. TAC ¶¶15-20. The TAC alleges that Mazer cooperated with Denault in concealing from the City the lack of progress being made on CityTime as a necessary antecedent to the kickback fraud. *Id.* ¶25.

These are well-founded allegations. That the genesis of the fraud was no later than 2003, and that Mazer conspired with Denault in that fraud are central allegations in the federal government's June 15, 2011 superseding indictment. Hyland Aff. Ex. 13 ¶¶10-11 [ECF No. 23-

2

11]. The City has stated that part of the kickback fraud involved "delaying the deployment and implementation of the Project." TAC ¶17, 25. This is the sort of information that Relator provided to FISA in 2004.

Because the TAC clearly alleges that Mazer's concealment in furtherance of the kickback scheme began no later than 2004, Relator's first disclosures to the City at the end of 2004 make him an original source for his kickback claims. This is particularly true of his disclosure to FISA that Mazer and Berger knew the "project is going to fail." TAC ¶37.

The TAC also newly alleges the existence of two emails that support the fact that Relator's disclosures to a City agency, the Financial Information Services Agency ("FISA") were contemporaneous with Mazer and Berger's fraud. On April 15, 2005, FISA's Amodeo emailed Relator had a "confidential chat about the perf[ormance] test plan." TAC ¶39. Only weeks later, on May 3, 2005, Berger reported to Mazer that he had successfully allayed Amodeo's testing concerns even though he had concealed from her that the "real problem is that the application is not ready for performance testing." TAC ¶40. Because concealing the lack of progress on CityTime, was an integral part of the kickback fraud, Relator was an original source due to his disclosures to FISA's Amodeo.

> **2. The TAC Alleges Relator was an Original Source Due to His 2009 iReport Because He Again Told of the Intentional Delay, Misrepresentations, Incompetence, and Profiteering at CityTime**

The Order states that the Relator's early 2009 DOI complaint and, impliedly, his identically worded iReport did not make him an original source because its allegations were vague and did not relate to the kickback and false billing scheme. Order at 33.

The TAC cures this deficiency by adding allegations that highlight that the iReport specifically ascribed scienter to Mazer and Berger, that they had directed employees "not to

'bad' mouth the project" even though they "KNEW very well this [CityTime] was going to be a complete failure." TAC ¶77. The iReport also identified the "obscene featherbedding of consultant positions with overly generous hourly rates." *Id.* These allegations, when combined with the previously discussed allegation that concealment of the lack of CityTime's progress was an integral part of the kickback fraud, TAC ¶¶20, 25, qualifies Relator as an original source.

> 3. **The TAC Alleges Relator was an Original Source Due to His *Daily News* Commentary Which Specifically Disclosed the Kickback Relationship To City Officials Prior to any other Disclosure**

The Order recounts in its summary of the allegations that Relator posted an "extensive series of comments" on the *Daily News* website, but does not address whether these disclosures rendered Relator an original source in its disclosure bar analysis section. Order at 16, 33. In fact, the communications were the first public disclosures of the improper kickback relationship between Mazer and DA Solutions. These communications also were directed at, and reached, senior City government officials. Consequently, the finding in the Order that Mr. Khurana did not disclose the kickback scheme (Order at 33) is obviated by the new allegations.

In these comments, on the *Daily News* website, Relator implored the City government to investigate the project. TAC ¶81. The TAC also adds a direct quote from Relator's April 1, 2010 *Daily News* commentary which explicitly discloses the fact that Mazer had illicit ties to DA Solutions. *Id*. In addition to existing allegations that the City Comptroller's Office received this disclosure about DA Solutions, the TAC alleges that the office's investigators closely reviewed these disclosures. TAC ¶82. In addition, the TAC alleges that FISA Director Robert Townsend and manager Amodeo read and discussed the commentary about DA Solutions and FISA on the day it posted. TAC ¶83. The TAC also newly alleges that the City Department of Investigation ("DOI") and U.S. prosecutors had read the commentary before knowing who Relator was and

4

that Joel Bondy of OPA, the agency overseeing the CityTime project, was attempting to identify the author of the commentary.  TAC ¶¶83-84.  Indeed, Joel Bondy noted that "there weren't many people who could have this access." *Id*.

Importantly, the TAC alleges that the DOI did not separately uncover the connection between Mazer and DA Solutions until June 2010, two months after Relator's commentary reached the Comptroller investigator and FISA senior management.  TAC ¶86.  As the Court noted, the public disclosure of the kickback scheme (in addition to those provided in the *Daily News* article submissions) occurred in December 2010, the time of the criminal complaint.  Order at 30.  And also, no other disclosures cited in the Order (i.e., pre-complaint news reports and the Audit Report, *see* Order at 31) come close to providing this information.  Thus, this information was independent of and materially added to publicly disclosed allegations.

Contrary to the finding in the Order, the TAC's new allegations concerning the *Daily News* commentary demonstrate that Relator was first to disclose the fraud allegations to the government, and is therefore, an original source for the claim that Mazer was receiving kickbacks from DA Solutions.

### 4. The TAC Alleges Relator Disclosed Knowledge That Materially Adds to the Vicarious Liability Claims

The Order states that nothing in the SAC demonstrated that Relator had knowledge that "adds in a material way to the publicly disclosed allegations and transactions".  Order at 34.

The TAC remedies this deficiency by adding allegations about his explicit disclosure of the kickback relationship.  In addition the TAC's allegations highlight the integral part that concealing the lack of progress in CityTime played in the kickback fraud.  TAC ¶¶20, 25.  The TAC also newly alleges evidence that the DOI and the US attorneys investigating CityTime found Relator's disclosures to be "very helpful", to have "some interesting things", warranted a

second interview, and involved an "important recollection" that SAIC's Michael Fayerman knew of Mazer's DA Solutions connection. TAC ¶87-89. In this context, the evidence Relator provided to the government that "illustrated the project's performance failures" did add in a material way to the publicly disclosed allegations. Validating Relator's disclosures, the scope of the fraud alleged by the government in its superseding indictment was enlarged to include a more general fraud to "artificially delay the deployment and implementation of the Project" that was not alleged in the December 2010 criminal complaint. TAC ¶¶17, 25. This is precisely what Relator disclosed, in many different ways, to City government officials, in addition to the many other pieces of information he provided both before and after December 2010.

Because Relator disclosed Mazer and Berger's knowing concealment of the implementation delays early in the life of the project and years before the superseding indictment publicly disclosed this aspect of the fraud, Relator is an original source of the vicarious liability claims.

### B. The TAC Alleges a Claim for False Certification of Quality Assurance Services

The Order states that Relator's quality assurance ("QA") claim fails because the SAC did not make any "specific representations about the goods or services provided," nor explains how they were misleading due to Spherion's noncompliance. Order at 38.

The TAC cures this deficiency by adding allegations that Spherion did not provide *any* bona fide QA services, because Spherion delegated provision of the QA services to conflicted entities and individuals who "could not be expected to evaluate their own performance, had a conflict of interest as defined by the QA contract, and were actively working to delay the implementation of CityTime for their own benefit." TAC ¶60. Under these alleged

circumstances, to say that QA services were provided to the City is analogous to a bank security guard who aided a bank robbery but then requested payment for his eight hour shift.

These new allegations are supported by information previously alleged in the SAC. In September 2004, Relator's automation tester role was reassigned to an SAIC appointed consultant from Technodyne.  SAC ¶26; TAC ¶32.  "In early- to mid-2005, Bondy of OPA granted control of all Spherion QA testing . . . to Scott Berger. . . .  Under the new arrangement, Mazer was the only Spherion representative who was regularly reported to unless another Spherion employee . . . specifically requested information." SAC ¶38; TAC ¶46.  In May 2005, Mazer and Berger appointed SAIC consultant Jeff Boldia to generate quality assurance data in place of Relator. SAC ¶39; TAC ¶47.  Boldia would later admit that SAIC management instructed him to manipulate CityTime load testing reports.  *Id*.  During 2005, Mazer and Berger continued to terminate "Spherion's consultants assigned to work on the quality assurance aspects of the CityTime project and replacing them with [less competent] consultants hired and paid through DA Solutions and PrimeView." SAC ¶49; TAC ¶57.

Because no QA services were provided by Spherion following Mazer and Berger's usurpation of the QA role, claims for payment submitted by Spherion were expressly false.  To use the example cited in the Order from *Bishop v. Wells Fargo & Co*., 823 F.3d 35, 43 (2d Cir. 2016), Spherion billed for QA services (rifles) but provided only worthless consultant hours (boxes of sawdust).  TAC ¶60-61.  The consultant hours billed may indeed have been worked, just as the sawdust was indeed delivered, but they were not what was contracted for.  As newly alleged in the TAC, the claims are also impliedly false because Spherion failed to disclose noncompliance with material conflict of interest requirements.  TAC ¶61, 63-65.

### C. The TAC Alleges a Claim for False Certification of Conflict of Interest Compliance

The Order categorizes Berger and Mazer's conflicts of interest as "a breach of the contractual provision itself" and not "a false certification of . . . compliance made in connection with a claim submission". Order at 39.

The TAC cures this deficiency by alleging that the conflict of interest provision of the QA contract was not a one-time contractual promise, but rather, it was "a representation that a current state of fact existed" that was made not only in the original contract, but also in each contract amendment made through 2005 and 2006. TAC ¶63-65. "With each amendment, Spherion was recertifying its compliance with the Conflict of Interest provision at the time of amendment, at a time when Spherion knew that Mazer, DA Solutions and Primeview had a conflict of interest." TAC ¶65. These representations were made in connection with a claim for payment, because the City would not have made payments under the QA contract had it been aware of the conflicts of interest. *See* TAC ¶30 Art. 5.1(A) (contract may be terminated "(2) Upon the failure of the Contractor to comply with any of the terms and conditions of this Agreement").

### III. Relator's Motion for Leave to Amend is Timely, in Good Faith and Would Not Prejudice Defendants

Relator respectfully submits that his proposed amendment should not be dismissed on grounds of timeliness, bad faith, or prejudice to Spherion, for the following three reasons.

Relator's motion is timely because it is filed within the thirty day time limit provided by the Order. The current complaint was filed in July 2015 [ECF No. 1-1] and for much of that period, Spherion's motion to dismiss was pending. Courts have rejected arguments of undue

delay in cases presenting even longer delays before amendment.[2]  In any event, "delay, standing alone, is an insufficient basis to deny leave to amend."  *United States v. Cont'l Ill. Nat'l Bank and Trust Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir. 1989).

Relator offers the amendment in good faith.  Many of the new allegations of the TAC are based on evidence gained through discovery obtained from the City in late 2015 and early 2016, months after filing of the SAC.  This evidence includes internal Spherion emails and internal emails between DOI, OPA and FISA personnel.  *See e.g.*, TAC ¶¶40-41, 72, 82-85, 87-89.

Spherion will suffer no unfair prejudice as a result of Relator's proposed amendment. "In gauging prejudice, [the court] consider[s], among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or *significantly delay the resolution of the dispute*." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 192 (2d Cir. 2008) (quotation marks omitted) (emphasis added). Neither of these factors applies here.  Spherion has not yet had to respond to discovery.  Spherion cannot plausibly argue that they will be unfairly prejudiced as a result of Relator supplementing the allegations of existing claims.  The amendment does not add new claims or parties, or expand the scope of Spherion's alleged liability or the City's injury.  A change in legal theory, even where it would increase the burdens of discovery (which is not the case here), has been rejected as grounds for establishing prejudice.[3]  Even if the amendment was not approved, Spherion would still be

---

[2] *See, e.g., Am. Med. Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800 (LMM), 2006 WL 3833440, at *3-4 (S.D.N.Y. Dec. 29, 2006) (finding no undue delay in plaintiffs' request to file fourth amended complaint two-and-a-half years after filing of third amended complaint, nearly two years after dismissal of some claims in third amended complaint, and four years after filing of original complaint where discovery was still in early stages); *State Farm Mut. Auto. Ins. Co. v. Grafman*, No. 04 Civ. 2609, 2007 WL 7704666, at *3 (E.D.N.Y. May 22, 2007) (finding no undue delay in motion for leave to amend filed two-and-a-half years after the original complaint was filed).
[3] *See, e.g., Foman*, 371 U.S. at 182 (holding Court of Appeals erred in affirming district court's denial of motion to vacate judgment to allow amendment of the complaint where "the amendment would have done no more than state an alternative theory for recovery"); *Cont'l Ill. Nat'l Bank & Trust Co.*, 889 F.2d at 1255 ("[T]he adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading."); *Taberna Capital Mgmt., LLC v. Jaggi*, No. 08 Civ. 11355

subject to the burdens of discovery and further litigation, because the Order sustained Relator's retaliation claims.

For the foregoing reasons, Relator respectfully requests that the Court grant leave to file the proposed Third Amended Complaint.

Dated: December 12, 2016

**KIRBY McINERNEY LLP**

By: _____

David Kovel (dkovel@kmllp.com)
David Bishop (dbishop@kmllp.com)
825 Third Avenue, 16th Floor
New York, NY 10022
Tel: (212) 371-6600
Fax: (212) 751-2540

**JAMES, HOYER, NEWCOMER AND SMILJANICH, P.A.**
John R. Newcomer, Jr.
Jillian Estes
One Urban Centre, Suite 550
4830 West Kennedy Blvd.
Tampa, FL 33609
Tel: (813) 397-2300
Fax: (813) 397-2310

---

(DLC), 2010 WL 1424002, at *2 (S.D.N.Y. Apr. 9, 2010) (finding no prejudice where amendment would add new legal theories and expand scope of discovery significantly); *In re AMF Bowling Sec. Litig.*, No. 99 Civ. 3023 (DC), 2003 WL 2012401, at *1-2 (in securities action filed over three years earlier, permitting filing of third amended complaint adding allegations of new misrepresentations that were "closely related to existing allegations in the case" even if "relat[ed] to other aspects of the IPO registration statement" at issue).