UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
STATE OF NEW YORK *ex rel.* VINOD KHURANA, :
et al., :
:
                          Plaintiffs, :                15-CV-6605 (JMF)
:
                -v-              :            MEMORANDUM OPINION
:                AND ORDER
SPHERION CORP. (N/K/A SFN GROUP, INC.), :
:
                        Defendant. :
:
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       In 1998, the City of New York (the "City") sought to implement an automated timekeeping system — called CityTime — to aid payroll operations for all City employees. The City hired a constellation of contractors, including Defendant Spherion Corp. ("Spherion"), to build the program. Mark Mazer, a Spherion employee, was given substantial authority and influence over the CityTime project, in large part because of his relationship with Joel Bondy, the director of the Office of Payroll Administration, which managed the project. Mazer and others used that authority to increase drastically the cost of the project, to their benefit. Among other things, they proposed an amendment to the agreement with the City to convert the "fixed-price" contract into a "fixed price level-of-effort" contract, shifting the burden of cost overruns from the contractors to the City. Mazer then caused the hiring of many consultants through staffing companies controlled by Mazer's relatives and associates, from whom Mazer solicited kickbacks equaling a large portion of the revenue the new consultants generated. Mazer also approved payments for hours that consultants did not, in fact, work on the CityTime project. The project dragged on, the costs ballooned, and Mazer and others profited. The scheme was

eventually revealed, and many of the conspirators, including Mazer and another consultant, Scott Berger, were indicted. Berger passed away before trial, but Mazer and others were convicted.

This case, brought pursuant to the Court's diversity jurisdiction, arises from the CityTime scandal. Specifically, Plaintiff Vinod Khurana, a former Spherion employee and citizen of California, alleges that he was fired in retaliation for reporting the fraud to his superiors, including Mazer and Berger, in violation of the New York False Claims Act ("NYS FCA"), N.Y. State Fin. Law § 187, *et seq.*, and the New York City False Claims Act ("NYC FCA"), N.Y.C. Admin. Code § 7-801, *et seq.*[1] As Khurana tells it, in the course of doing quality assurance work on the CityTime project after he was hired by Spherion in 2004, he discovered far more substantial failures than one would expect so many years into the project. *See* ECF No. 153-5 ("Khurana Decl."), ¶ 3. He reported his concerns to, among others, Mazer and Berger, who acknowledged that the project was doomed to fail and instructed him not to tell City officials. Khurana Decl. ¶ 6. Khurana also learned that Mazer had conflicts of interest with respect to the consultant staffing agencies and that the City was being misled regarding the project's progress. ECF No. 153-1 ("Khurana Dep."), at 229, 319. Concerned, he disobeyed his orders and reported what he knew to City officials and other Spherion employees. This was a problem for Mazer and Berger, and so they demoted and eventually fired him. Khurana Decl. ¶¶ 16-19.

Needless to say, Spherion paints a much different picture — to wit, that Khurana merely raised concerns about the success of the CityTime project as a routine part of his job, and did not reasonably suspect fraud, and that he was terminated for unrelated reasons, including repeated

---

[1] Khurana initially brought *qui tam* claims under the NYS FCA and NYC FCA as well, but those claims were dismissed on November 10, 2016, by the Honorable John F. Keenan, to whom this case was previously assigned. *See New York ex rel. Khurana v. Spherion Corp.*, No. 15-CV-6605 (JFK), 2016 WL 6652735 (S.D.N.Y. Nov. 10, 2016) ("*Khurana I*").

failures to arrive on time and to submit timesheets in a timely fashion — and, on that basis, moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on Khurana's remaining claims of retaliation. *See* ECF No. 136, at 7-20. More specifically, Spherion contends that Khurana cannot prove the elements of a retaliation claim under the NYS FCA and NYC FCA: (1) that he engaged in protected activity, *see id.* at 7-12; (2) that Spherion knew of that activity, *see id.* at 12-15; and (3) that Spherion retaliated against him for that conduct, *see id.* at 15-21; *see also, e.g.*, *United States ex rel. Chorches for Bankruptcy Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 95 (2d Cir. 2017); *Khurana I*, 2016 WL 6652735, at *17.[2] These arguments are not without force, but viewing the record "in the light most favorable" to Khurana and drawing all reasonable inferences in his favor, as required, *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), the Court cannot conclude that no "reasonable jury could return a verdict" for Khurana, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, Spherion's motion for summary judgment must be denied.

First, although the evidence is somewhat thin, a jury could conclude that Khurana engaged in protected activity and that Spherion knew about it. Khurana observed that the CityTime project was progressing unreasonably slowly. *See* Khurana Dep. 97. He reported his concerns to his superiors, who admitted that the project was bound to fail and instructed him not to share his concerns with the City. *See* Khurana Dep. 99-100. Khurana also learned that the

---

[2]   Although Khurana's claims are brought solely under state and city law, courts "regularly look to federal law when interpreting" the NYS FCA and NYC FCA, because those statutes were modeled on the federal False Claims Act. *Khurana I*, 2016 WL 6652735, at *8; *accord United States ex rel. Assocs. Against Outlier Fraud v. Huron Consulting Grp., Inc.*, 929 F. Supp. 2d 245, 256 (S.D.N.Y. 2013) ("[T]he New York False Claims Act . . . is nearly identical to the [federal False Claims Act] in all material respects.").

City was misled about the project's progress and that Mazer had conflicts of interest with respect to the consultant staffing agencies. *See* Khurana Dep. 229, 319. A jury could find that this evidence, taken together, was enough to make a reasonable person suspicious of fraud and that there was "a distinct possibility" that Khurana "would find evidence of" an NYS or NYC FCA violation. *United States ex rel. Smith v. Yale Univ.*, 415 F. Supp. 2d 58, 103 (D. Conn. 2006) ("Generally, when a potential plaintiff engages in an investigation in which it would be reasonable to conclude that there is a distinct possibility that he or she would find evidence of a FCA violation, courts are inclined to find that the first prong of the analysis has been satisfied." (internal quotation marks omitted)); *see also United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.C. Cir. 1998) (noting that many circuits have held it "sufficient that a plaintiff be investigating matters that reasonably could lead to a viable False Claims Act case"). And a reasonable jury could conclude, in turn, that, by reporting his suspicions and the true test results both internally and to City officials, Khurana engaged in protected activity known to Spherion. *See, e.g.*, Khurana Decl. ¶¶ 9, 13 (Khurana internally reported that "something that was not right" and that the project was run "just to put money in the pockets of Mazer, Berger, and SAIC"); *id.* ¶ 13 (Khurana told other consultants that he "thought Berger and Mazer 'were up to no good' and 'pocketing City funds for themselves'"); *see also, e.g.*, *Chorches*, 865 F.3d at 96-97 (holding that any lawful act intended and reasonably expected to "hinder" a violation of the FCA constitutes protected activity).

Second, although the record on retaliatory discharge is similarly sparse, a reasonable jury could conclude that protected activity was a but-for cause of Khurana's termination. Khurana argues, and Spherion does not seem to dispute, that he was removed from one group because he expressed his concerns internally and to City employees. *See* ECF No. 151, at 12; *see generally*

ECF No. 156. Whether or not that act alone could give rise to liability, record evidence suggests that, when Khurana started working in his new group, he was cut less slack as a result. *See, e.g.*, ECF No. 153-8 (December 15, 2006 email from Berger to Mazer, stating that if Khurana "doesn't cut it or creates problems we can get rid of him"). Additionally, there is evidence that Khurana continued to engage in protected activity after being transferred (although it is less clear whether Mazer and Berger were aware of that activity). *See, e.g.*, Khurana Decl. ¶ 16 (in January 2007, Khurana told consultants that Mazer and Berger were "up to no good" and "pocketing City funds for themselves"). Finally, Khurana identifies evidence casting doubt on Spherion's claims that he was fired because he was late to work and failed to submit time sheets — including evidence that other consultants were not fired for engaging in similar behavior. *See, e.g.*, ECF No. 153-7, at 65 (manager of automation testing group testifying that, in the usual course, he would only raise a tardiness issue with a consultant, Mazer, or Berger if advised about it by the leader of the automation testing group); ECF No. 153-31, at 67 (automation team leader testifying that she was never frustrated with Khurana for coming in late); *id.* at 69 (automation team leader testifying that it was not a problem for a consultant to arrive late after working late the previous night and that she could not recall anyone on the CityTime project being fired for tardiness); ECF No. 153-39 (March 24, 2005 email listing sixteen consultants whose time sheets were three weeks late). In light of all this evidence, a reasonable jury could conclude that Khurana's termination was retaliatory.

In sum, drawing all inferences in Khurana's favor, as required, *see, e.g.*, *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004), the Court concludes that Spherion's motion for summary judgment must be denied. Unless and until the Court orders otherwise, the parties shall submit a proposed joint pretrial order and associated

5

materials (in accordance with Section 5 of the Court's Individual Rules and Practices in Civil Cases, available at https://www.nysd.uscourts.gov/hon-jesse-m-furman) **within thirty days** of the date of this Memorandum Opinion and Order and shall be prepared to begin trial as soon as two weeks thereafter. That said, the Court is firmly of the view that this case could be settled and that the parties should try to settle it without the need for an expensive and potentially risky trial. To that end, the Court directs the parties to confer immediately about the prospect of settlement and conducting a settlement conference before Magistrate Judge Wang (or before a mediator appointed by the Court or retained privately). If the parties agree that a settlement conference would be appropriate, they should promptly advise the Court and seek an appropriate extension of the pretrial deadlines.

SO ORDERED.

Dated: February 26, 2020
      New York, New York

                                          JESSE M. FURMAN
                                     United States District Judge